## JACOBS CONSTRUCTORS, INC.,

v.

## NPS ENERGY SERVICES, INC., (D.C. Civil No. 97–cv–00131),

NPS Energy Services, Inc., Appellant at No. 00–3239.

Jacobs Constructors, Inc.,

v.

## National Union Fire Insurance Company of Pittsburgh, PA, (D.C. Civil No. 98–cv–00205),

Jacobs Constructors, Inc., Appellant at No. 00–3238.

Nos. 00–3238, 00–3239.

United States Court of Appeals, Third Circuit.

Argued March 1, 2001.

Filed Sept. 4, 2001.

---

**29.** *See Brumfield v. Sanders,* 232 F.3d 376, 380 (3rd Cir.2000).

**30.** *Cf. id.*

Dennis A. Watson (Argued), Andrew F. Adomitis, Grogan, Graffam & McGinley, Pittsburgh, PA, Counsel for Jacobs Constructors, Appellant/Cross Appellee.

Elizabeth C. Bailey, Thomas McKay, III (Argued), Cozen & O'Connor, Philadelphia, PA, Counsel for NPS Energy, Appellees/Cross Appellants.

R. Bruce Morrison (Argued), Conrad J.J. Radcliffe, Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Counsel for National Union Fire Ins. Co., Appellees/Cross Appellants.

Before SLOVITER, NYGAARD, and ROTH, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

In these consolidated declaratory judgment actions, we are presented with disputes concerning two contracts: an indemnification agreement between a contractor and a subcontractor, and a subsequent insurance contract between the contractor and an insurance company. On appeal, there are three primary issues: (1) whether NPS Energy Services is obligated to defend Jacobs Constructors, Inc., pursuant to their subcontract, in a declaratory judgment action in which a third party, Pennzoil Products Company, is seeking contractual indemnification from Jacobs for work-related injuries and deaths; (2) whether NPS Energy fulfilled its contractual obligation to name Jacobs as an additional insured on the National Union Fire Insurance Company of Pittsburgh insurance agreement; and (3) whether the insurance agreement between National Union and Jacobs, which covers Jacobs as an "additional insured," requires National Union to indemnify and defend Jacobs in the declaratory judgment action between Pennzoil and Jacobs.

The District Court partially granted cross-motions for summary judgment, holding that NPS Energy is obligated to provide an interim defense on behalf of Jacobs. The District Court also held that NPS Energy fulfilled its obligation to name Jacobs as an additional insured on the National Union Policy. Finally, the court held that National Union's insurance policy does not provide coverage for liability that an additional insured assumes pursuant to an indemnity agreement. For the reasons discussed below, we will affirm in part and reverse in part.

### I. Facts and Procedure

This case arises out of a fire and explosion that occurred on October 16, 1995, at Pennzoil's oil refinery in Rouseville, Pennsylvania. Before the explosion, Pennzoil hired Jacobs to construct an addition to the refinery known as the Specialty Wax Project. Under the terms of their contract, Jacobs agreed to indemnify Pennzoil for liability and defense costs for all claims arising from the personal injury or death of subcontractor employees, regardless of the cause. Jacobs' indemnity obligations, however, did not extend to damage or loss resulting from Pennzoil's willful misconduct or gross negligence.

Jacobs, in turn, hired NPS Energy to perform the mechanical services work at the Specialty Wax Project. Like the general contract between Jacobs and Pennzoil, the subcontract contained an indemnity clause, requiring NPS Energy to indemnify Jacobs. It also required NPS Energy to procure commercial general liability coverage of at least five million dollars for each occurrence and five million dollars in the aggregate. As a result, NPS Energy obtained a general liability policy ("primary policy") and an umbrella policy with National Union. Under both policies, NPS Energy was covered as a "named insured" and Pennzoil and Jacobs were covered as "additional insureds." The terms of both the indemnification agreement and the umbrella insurance policy are contested.

The fire and explosion occurred near the portion of the Pennzoil refinery where Jacobs and NPS Energy were working. The explosion seriously injured and killed several individuals, including employees of NPS Energy. Subsequently, the injured and representatives of deceased NPS Energy employees brought personal injury and wrongful death actions against Pennzoil. Neither NPS Energy nor Jacobs were joined in these actions. Pennzoil, however, sought to enforce its respective indemnification agreements with Jacobs and NPS Energy. Both denied liability

and refused Pennzoil's tender. Pennzoil also brought claims against National Union. National Union declined coverage contending that the lawsuits arose out of Pennzoil's negligence.

Pennzoil filed a declaratory judgment action against Jacobs in the District Court of Harris County, Texas. It sought a declaration that Jacobs was obligated to defend against the NPS Energy employee suits. Pennzoil eventually added a breach of contract claim. Jacobs denied liability, arguing that Pennzoil caused the fire through its gross negligence and/or willful misconduct.

Thereafter, NPS Energy, National Union, and Pennzoil entered into a Settlement Agreement and Release. As part of the agreement, National Union agreed to tender the full value of its one million dollar primary policy, as well as four million dollars under the umbrella policy, so Pennzoil could settle the employee claims. The agreement also required Pennzoil to release NPS Energy and National Union from any further fire-related liability. Pennzoil, however, reserved the right to seek indemnity from Jacobs. As such, it continued to pursue its declaratory judgment action in Texas in order to recover the additional cost of resolving the employee suits not covered by the National Union settlement, approximately five million dollars.

In response to Pennzoil's action in Texas, Jacobs filed a declaratory judgment action in the Western District Court of Pennsylvania against NPS Energy. It requested the following declaration: (1) Jacobs is entitled to indemnification from NPS Energy for any payments it may be required to make to Pennzoil; (2) NPS Energy is obligated to defend Jacobs; (3) the subcontract between NPS Energy and Jacobs required NPS Energy to name Jacobs as an additional insured in the Na-

tional Union Insurance Policy; and (4) NPS Energy is not entitled to indemnification from Jacobs for payments it made or may make to Pennzoil. NPS Energy filed a motion to dismiss, arguing that the case was not ripe for decision given the pendency of the Texas action. The District Court granted the motion in part. First, it held that Jacobs' requested indemnification from NPS Energy was not ripe because additional fact finding was necessary and could interfere with the Texas action. Second, the court held that the question of whether NPS Energy was obligated to defend Jacobs was ripe, but only to the extent that Jacobs sought an interim defense in the Texas action. Finally, the court denied NPS Energy's motion with respect to naming Jacobs as an additional insured and Jacobs' obligation to indemnify NPS Energy because the record was not sufficiently developed on either issue.

Jacobs also filed a declaratory judgment action against National Union. In it, Jacobs requested a declaration stating that: (1) National Union must indemnify Jacobs for payments that Jacobs is obligated to make to Pennzoil as a result of the Texas action; and (2) National Union must defend Jacobs in the Texas action. The District Court consolidated Jacobs' action against both NPS Energy and National Union. Thereafter, all three parties filed motions for summary judgment.

The District Court granted Jacobs' summary judgment motion concerning NPS Energy's interim duty of defense in the Texas action. It held that the subcontract with Jacobs does not contain any language that limits the scope of NPS Energy's duty to defend to tort claims or claims brought directly by plaintiffs who suffered personal injury or property damage. The District Court also granted NPS Energy's summary judgment motion. It held that NPS Energy was required to name Jacobs as an

additional insured on the National Union insurance policies but nonetheless had satisfied that contractual requirement. In addition, the District Court declined to issue a declaration regarding whether NPS Energy was entitled to indemnification from Jacobs for any payments it made or may make to Pennzoil. It reasoned that Jacobs failed to produce any evidence that NPS Energy made payments to Pennzoil or that NPS Energy sought indemnification from Jacobs. Finally, the District Court granted National Union's summary judgment motion. The court held that National Union's indemnity obligations to Jacobs were not ripe,[1] and that National Union's umbrella policy did not provide Jacobs a defense in the Texas action because it listed Jacobs only as an additional insured.

Jacobs appeals the court's judgment: (1) that NPS Energy fulfilled its obligation to name Jacobs as an additional insured on the National Union insurance agreement; and (2) that the National Union umbrella policy does not require National Union to provide Jacobs with indemnification or a defense in the Texas action. NPS Energy cross-appeals, arguing that, per the terms of its subcontract, it is not obligated to provide Jacobs with a defense in the Texas action.[2]

## II. Standard of Review

Because this is an appeal from a grant of summary judgment, our review is plenary. *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir.1999). Thus, we apply the same standard used by the District Court. *See id.* Summary judgment is appropriate if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, we must consider the evidence in the record in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Moreover, we have plenary review over a District Court's interpretation of state law, *see Chemical Leaman Tank Lines, Inc. v. Aetna Cas. & Sur. Co.*, 89 F.3d 976, 983 (3d Cir.1996), as well as its conclusion as to the legal operation of an insurance policy. *New Castle County v. Hartford Accident & Indem. Co.*, 933 F.2d 1162, 1183 (3d Cir.1991). The District Court determined, and the parties do not dispute, that Pennsylvania law applies to this case. As such, we must apply the substantive law of Pennsylvania. *See Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 613 (3d Cir.1992).

## III. Discussion

We will first address Jacobs' requested declarations against NPS Energy. For purposes of this appeal, Jacobs claims that NPS Energy has an interim duty to de-

---

1. After the District Court held that Jacobs' claims of indemnity against NPS Energy were not ripe for review, Pennzoil and Jacobs settled the Texas declaratory judgment action. Subsequently, Jacobs filed a complaint in the United States District Court for the Western District of Pennsylvania against NPS Energy. The complaint alleges a breach of contract against NPS Energy for failing to indemnify Jacobs for its settlement with Pennzoil and pay Jacobs' legal costs in litigating the Texas contract dispute. This action is pending.

2. Because, as noted in Footnote 1, Pennzoil's declaratory judgment action against Jacobs is settled, Jacobs' claim that NPS Energy is obligated to provide it with an interim defense is not a claim for an actual defense. Rather, in the wake of the settlement, it is a claim for reimbursement for defense costs. However, in order to avoid confusion, we will retain the label used by the parties and refer to Jacobs' claim against NPS Energy as a duty to defend claim.

fend it in the Texas declaratory judgment action with Pennzoil, and that NPS Energy has an obligation to list it as an additional insured on the National Union Insurance Policy. Then, we will consider Jacobs' claim that National Union has an obligation to indemnify and defend it in the Texas action.

## A. NPS Energy's Duty to Defend

Jacobs' demand for NPS Energy to defend it in the Texas declaratory judgment action against Pennzoil is premised on indemnity provisions found in sections 9A and 9C of its subcontract with NPS Energy. Sections 9A and 9C state in pertinent part:

A. To the fullest extent permitted by law with respect to the work covered by the Subcontract, Subcontractor agrees to defend, indemnify, save and hold harmless, the Owner and Contractor, and all their affiliates, parents, subsidiaries, divisions, directors, officers, agents, heirs, assigns, successors-in-interest, representatives and employees ("Indemnitees"), from and against the following: All claims, liabilities, demands, damages, losses, costs and expenses, including reasonable attorneys' fees, awards, fines and judgments, in law or in equity, of every kind and nature whatsoever ("Claims"), arising by reason of personal injury, the death of or bodily injury to persons (including employees of the subcontractor), design defects (if design originated from subcontractor), damages or destruction of property or the loss of use thereof, arising out of or alleged to have arisen out of· in whole or in part by, or in connection with, Subcontractor's operations to be performed under this Subcontract, ... but excluding the

sole negligence and exclusive negligence or willful misconduct of the Indemnitees.

C. In the event of injury to or death of any person or loss of or damage to property or the loss of use thereof, arising as described in subparagraphs (1) and/or (2) below, it shall be assumed, as between Contractor and Subcontractor and *until it has been finally determined otherwise*, that the Indemnitees are entitled to be defended and indemnified by Subcontractor pursuant to the provisions hereof; and, in such event, Subcontractor and its insurer, irrespective of any allegations in the pleadings, shall defend any lawsuit or litigation brought against any of the Indemnitees with respect to any such injury, death, loss, or damage:

(1) where such injury, death, loss or damage occurred to any employee of Subcontractor or of its sub-contractors of any tier;

. . . . .

The indemnitees shall be entitled at their expense to retain their own attorneys to assist and monitor counsel hired by Subcontractor and its insurer to defend the indemnitees pursuant hereto.

J.A. at 121–22 (emphasis added).

The District Court concluded that section 9A only applies after there is a "final determination" of who will ultimately pay for Jacobs' defense. Thus, because the Texas action was not resolved at the time Jacobs sought its declarations, the District Court focused solely on section 9C, which contains an "interim cost shifting feature." The court held that section 9C obligates NPS Energy to provide Jacobs with an interim defense against Pennzoil. It reasoned that section 9C does not contain any language that limits the scope of the duty

to defend to tort claims or claims brought directly by plaintiffs who suffered personal injury or property damage. The court construed the phrase "any lawsuit or litigation brought against any of the Indemnitees with respect to any such injury, death, loss or damage" as meaning *any type* of suit relating to a personal injury. Thus, it held that section 9C could apply to contractual indemnity arising out of a personal injury claim.

NPS Energy argues that the District Court erroneously focused upon whether section 9C expressly excludes contractual indemnity claims. Under Pennsylvania law, it is well-established that indemnification for a party's own negligence will not be inferred and must be stated expressly, clearly, and unequivocally in an indemnity clause. NPS Energy argues that this principle also applies to the indemnification and defense of a party's contractual liability. Thus, it contends that the District Court should have examined whether section 9C expressly *includes,* rather than excludes, such obligations. Although this a difficult question, we agree with NPS Energy.

The Pennsylvania Supreme Court has not addressed whether an indemnity provision can extend to an indemnitee's independent contractual liability to indemnify and defend a third party, where such obligation is not expressed in unequivocal terms. Thus, we are "required by controlling precedent to predict how the Pennsylvania Supreme Court would decide this issue." *Hon v. Stroh Brewery Co.*, 835 F.2d 510, 512 (3d Cir.1987).

■ We begin with general indemnity principles. The construction of an indemnity contract is a question of law for the court to decide. *See Hutchison v. Sunbeam Coal Corp.*, 513 Pa. 192, 201, 519 A.2d 385, 390 (1986). Under Pennsylvania law, the court must strictly construe the scope of an indemnity contract against the party seeking indemnification. *See Brown v. Moore*, 247 F.2d 711, 722 (3d Cir.1957), *disapproved on other grounds.* As with any other contract, the court must determine the intentions of the parties. *See Metzger v. Clifford Realty Corp.*, 327 Pa.Super. 377, 385, 476 A.2d 1, 4 (1984) (citation omitted). If the indemnity clause is clear and unambiguous, then the intentions of the parties should be ascertained primarily by looking to the language used in the agreement. *See Fallon Elec. Co., Inc. v. The Cincinnati Ins. Co.*, 121 F.3d 125, 127 (3d Cir.1997). Only where the court finds ambiguity may it consider the circumstances under which the contract was signed. *See East Crossroads Ctr., Inc. v. Mellon–Stuart Co.*, 416 Pa. 229, 230, 205 A.2d 865, 866 (1965). The mere fact that the parties do not agree upon the proper interpretation of an indemnity clause does not necessarily render the clause ambiguous. *See Metzger*, 327 Pa.Super. at 386, 476 A.2d at 4.

■ It is well-settled in Pennsylvania that an indemnity agreement that covers loss due to the indemnitee's own negligence must be clear and unequivocal. The Pennsylvania Supreme Court first set forth this principle in 1907, in *Perry v. Payne*, 217 Pa. 252, 66 A. 553 (1907). In that case, the Court stated:

We think it clear, on reason and authority, that a contract of indemnity against personal injuries, should not be construed to indemnify against the negligence of the indemnitees, unless it is so expressed in unequivocal terms. The liability on such indemnity is so hazardous, and the character of the indemnity so unusual and extraordinary, that there can be no presumption that the indemnitor intended to assume the responsibility unless the contract puts it beyond doubt by express stipulation. No inference

from words of general import can establish it.

*Id.* at 262, 66 A. at 557.

The Pennsylvania Supreme Court reinvigorated the *Perry* rule in 1991, in *Ruzzi v. Butler Petroleum Co.*, 527 Pa. 1, 588 A.2d 1 (1991). *Ruzzi* concerned an agreement whereby a property owner would indemnify a contractor "from any and all liability for claims for loss, damage, injury or other casualty to persons or property caused" by a renovation operation. In light of *Perry*, the court held that the clause was not specific enough to require indemnification for the contractor's own negligence. In so ruling, the *Ruzzi* court stated:

> We conclude that the only intent that can be gleaned from this document is that the parties did not intend to indemnify for acts of the indemnitee's negligence, since words of general import are used. We can discern no reason to abandon the *Perry* rule of contract interpretation which is still a valuable rule of construction, rooted in reason and authority and reject Butler Petroleum's contrary arguments.

*Id.* at 9, 588 A.2d at 5.

■ We believe that the Pennsylvania Supreme Court would hold that the *Perry–Ruzzi* doctrine applies to indemnity claims for losses contractually assumed by the indemnitee. We reach this conclusion for several reasons. First, the policy underlying the *Perry–Ruzzi* doctrine applies with equal force to indemnification for contractual liability to a third party. Similar to a contract to indemnify another for his own negligence, an agreement to indemnify another for his contractual liability to a third party imposes an obligation, regardless of the fault of the indemnitor. Further, the extent of such an obligation is "uncertain and indefinite, and entirely in the hands of [the indemnitee.]" *See Perry*, 217 Pa. at 259, 66 A. at 555. There-

fore, such indemnification imposes an "unusual" and "extraordinary" obligation in the same manner as indemnification for one's own negligence. Thus, such an obligation must be stated plainly, in clear and unequivocal language.

The Fifth Circuit's decision in *Foreman v. Exxon Corp.*, 770 F.2d 490 (5th Cir. 1985), which addressed the same issue, supports our rationale. In *Foreman*, Exxon, the owner of an oil platform, agreed to indemnify Diamond M., the owner of a drilling rig on the platform, for any personal injury suit brought against it by invitees on the platform. Offshore, the corporation in charge of drilling operations on the platform, agreed to indemnify Exxon for any personal injury claims brought by Offshore employees. An Offshore employee was injured while working on the platform and sued Exxon and Diamond M. Diamond M. sought indemnity for its liability from Exxon under the Exxon/Diamond M. indemnification agreement. In turn, Exxon sought indemnity from Offshore, including amounts that it owed to Diamond M. *See Foreman*, 770 F.2d at 491–92.

The Fifth Circuit held that Offshore's indemnity obligation to Exxon did not cover Exxon's contractual liability to Diamond M. The court held that the situation was analogous to a party seeking indemnity for its own negligence:

> A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of the indemnitee. *For the same reasons express notice is required where a party seeks to shift his contractual liability to indemnify a third party.*

*Id.* at 498 (*quoting Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981)) (emphasis added). Thus, indemnity for contractually assumed liability may "arise only from the plainly expressed intentions of the parties, spelled out in unambiguous terms." *Id.* at 498.

Next, our position is consistent with the well-established principle in Pennsylvania that an indemnity clause is to be construed against the party seeking indemnification. Indeed, because the nature and purpose of any indemnity agreement involves the shifting and voluntary assumption of legal obligations, they are to be narrowly construed. As a general rule, parties must use clear, unambiguous language to ensure their enforcement. It follows that the enforcement of the duty to indemnify for contractual liability should hinge on the same criteria.

■ Having concluded that *Perry–Ruzzi* applies where a party seeks indemnification for its independent contractual liabilities, our next task is to apply it to the present case. The agreement at issue here does not unequivocally require NPS Energy to defend Jacobs in an indemnification suit brought by a third party. Rather, section 9C of the agreement simply provides that:

> In the event of injury to or death of any person or loss of or damage to property or the loss of use thereof ... it shall be assumed ... that the Indemnitees are entitled to be defended and indemnified by the Subcontractor ... and, in such event, Subcontractor and its insurer, irrespective of any allegations in the pleadings, shall defend any lawsuit or litigation brought against any of the In-

> demnitees with respect to any such injury, death, loss, or damage....

J.A. at 121–22.

Absent express language to the contrary, we believe that the phrase "lawsuit or litigation *brought with respect to any such injury, death, loss, or damage*" should be interpreted more narrowly. Rather than covering *any* lawsuit related to a personal injury or death, we believe the phrase extends only to NPS Energy's direct liability to Jacobs. In other words, NPS Energy is liable only for claims brought directly against Jacobs. Therefore, Pennzoil's personal injury claims against Jacobs are too attenuated. NPS Energy simply did not have ample notice of its obligation to defend Jacobs in such suits.

Nonetheless, Jacobs argues that the language "irrespective of any allegations in the pleadings" clarifies the breadth of NPS Energy's potential liability. However, Jacobs fails to read this language in context. It is immediately followed by the phrase "shall defend any lawsuit or litigation brought against any of the Indemnitees with respect to any such injury, death, loss or damage...." We read this phrase narrowly in accordance with its plain meaning and conclude that it refers only to allegations relating to injury, death, loss, or damage. Similarly, section 9A does not contain any agreement by NPS Energy to defend Jacobs in its disputes with Pennzoil over contractually assumed liability.[3] Section 9A states only that NPS Energy

> agrees to defend, indemnify, save and hold harmless, the Owner and Contractor ... from and against the following: All claims ... arising by reason of per-

---

**3.** As noted above, the District Court confined its analysis to whether Jacobs had an *interim* duty to defend under section 9C, because the Pennzoil action against Jacobs was still pending. Our analysis of Jacobs' duty to defend

claim, however, must include section 9A, which contemplates a final determination, because the Pennzoil action against Jacobs has been settled.

sonal injury, the death of or bodily injury to persons (including employees of the subcontractor), design defects (if designed originated from subcontractor), damages or destruction of property.... J.A. at 121–22. Applying the *Perry–Ruzzi* doctrine, we interpret the phrase "All claims ... arising by reason of personal injury" to mean tort claims. Like the text contained in section 9A, this broad language is simply not specific enough to require defending against contractual liability, even if triggered by personal injuries.

In addition to the agreement itself, the record indicates that NPS Energy was unaware of its alleged duty to defend Jacobs in suits arising from contractual obligations. For example, Jacobs did not disclose to NPS Energy the nature or extent of its broad indemnification obligations to Pennzoil. In fact, Jacobs' subcontract negotiators were unaware of the substance of Jacobs' contract with Pennzoil. Thus, NPS Energy had no way of knowing the broad and far-reaching scope of its alleged indemnification duties. Additionally, Jacobs offered the contract to NPS Energy on a "take it or leave it basis." Jacobs required its subcontractors to adhere to a written form subcontract, with little or no alterations. J.A. at 35, 64. Accordingly, the negotiations failed to provide NPS Energy with additional information regarding its contractual duties.

Consistent with the policy of the Pennsylvania Supreme Court as demonstrated in the *Perry–Ruzzi* doctrine, we will not endorse the silent shifting or involuntary assumption of obligations that an indemnitor ordinarily would not likely undertake. To do otherwise would be to transform definitive indemnification agreements into open-ended guarantees in the nature of insurance policies. In sum, we conclude that the Pennsylvania Supreme Court

would apply the *Perry–Ruzzi* doctrine to indemnity claims for losses contractually assumed by an indemnitee. As such, NPS Energy's duty to defend Jacobs in contractual indemnity suits may arise only from the plainly expressed intention of the parties, spelled out in unambiguous terms. Given the absence of such specific language in section 9A and 9C, we hold that NPS Energy was not obligated to defend Jacobs against contractual indemnity claims.

## B. NPS Energy's Obligation to List Jacobs as an Additional Insured

█ It is undisputed that NPS Energy maintained insurance in the requisite amounts and named Jacobs as an additional insured. Jacobs, however, argues that the District Court erred by finding that NPS Energy satisfied its contractual obligation to name Jacobs as an additional insured on the National Union Policy, and yet nonetheless concluded that Jacobs is not entitled to coverage. According to Jacobs, the District Court's rulings are mutually exclusive. It contends that if NPS Energy had performed its obligation to procure insurance under the subcontract, then the National Union policies would have covered Jacobs for all the contractual liabilities assumed by NPS Energy. We disagree and conclude that the District Court was correct in all respects.

The agreed upon insurance obligations undertaken by NPS Energy are set forth in section 8 of the Jacobs/NPS Energy subcontract. Section 8A requires NPS Energy to maintain insurance coverage during the life of the subcontract, including "[c]ommercial General Liability Insurance with combined single limit for bodily injury liability and property damage liability of at least $5,000,000.00 for each occurrence and $5,000,000.00 aggregate." J.A. at 119. Section 8B of the subcontract

requires that both Jacobs and Pennzoil be named as additional insureds. Specifically, it provides in relevant part:

> The policies of insurance shall contain a provision expressly extending the coverage thereof to contractual liabilities assumed by said Subcontractor under the subcontract, including, but not limited to, Subcontractor's indemnity and other obligations set forth in the Paragraph entitled Subcontractor's Indemnity hereinafter, and shall name Contractor, [Jacobs] its parent, subsidiaries, divisions, and affiliated companies and its and their officers, directors, employees, agents, heirs, assigns, successors in interest, and representatives, and Owner [Pennzoil] as additional insureds....

*Id.* at 120.

The language of section 8B is clear and unambiguous. The contract first requires NPS Energy to procure insurance against contractual liability for itself. It states, "[t]he policies of insurance shall contain a provision expressly extending the coverage thereof to contractual liabilities assumed by said Subcontractor under the subcontract ..." *Id.* (emphasis added).[4] Then, in a separate clause set apart by a comma, it requires NPS Energy to name Jacobs as an additional insured. There is no express indication that NPS Energy was required to procure contractual liability for Jacobs.

It is well settled in Pennsylvania that unambiguous indemnity contracts are enforced strictly according to their terms. *See Kiewit Eastern Co., Inc. v. L&R Constr. Co., Inc.*, 44 F.3d 1194, 1199 (3d Cir.1995); *Fallon*, 121 F.3d at 127. Accordingly, the District Court's rulings are not contradictory. NPS Energy complied with the requirements of section 8B, even though the National Union policy does not cover Jacobs' contractual liability. As such, we affirm the District Court's entry of summary judgment with respect to this issue.

## C. Jacobs' Coverage Under the National Union Policy

Jacobs next contends that it is insured under the National Union Umbrella Policy for defense and indemnity costs resulting from the Texas action.[5] It argues that the District Court erroneously held that the umbrella policy affords an "additional insured" more restricted coverage than a "named insured." Again, we agree with the District Court.

At the outset, we recognize certain general rules that Pennsylvania courts have applied in construing insurance policies. First, the court must "ascertain the intent of the parties as manifested by the language of the policy." *Standard Vene-*

---

**4.** Jacobs spends a considerable amount of time in its brief arguing that NPS Energy's assumption of Jacobs' contractual indemnification obligations to Pennzoil requires NPS Energy to provide it with insurance coverage for such contractual liability. However, because we hold that the subcontract indemnity agreement does not require NPS Energy to indemnify Jacobs for its independent contractual liability, we do not address this argument.

**5.** As we stated previously, National Union issued a primary policy and an umbrella policy to NPS Energy. Jacobs and Pennzoil are named as an additional insured on *both* poli-

cies. Pursuant to a settlement agreement, National Union has already agreed to pay Pennzoil a total of five million dollars, including one million dollars from the primary policy and four million dollars from the umbrella policy. The one million dollar payment exhausted National Union's coverage under the primary policy. Accordingly, the District Court's analysis focused on National Union's duties under the umbrella policy. The parties do not contest this interpretation of the insurance policies and thus our analysis of Jacobs' recovery will also be limited to the umbrella policy.

*tian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). In doing so, an insurance policy must be read as a whole and its terms, when unambiguous, must be construed according to their plain and ordinary meaning. See *Pennsylvania Mfrs.' Ass'n Ins. Co. v. Aetna Cas. & Sur. Ins. Co.*, 426 Pa. 453, 457, 233 A.2d 548, 551 (1967); *see also Koval v. Liberty Mut. Ins. Co.*, 366 Pa.Super. 415, 420, 531 A.2d 487, 489 (1987). Where a provision is ambiguous, it must be construed in favor of the insured. *See Standard Venetian Blind Co.*, 503 Pa. at 305, 469 A.2d at 566. A provision is ambiguous if reasonable persons, after considering the context of the entire policy, would honestly differ as to its meaning. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 814 (3d Cir.1994). However, the court should read the policy to avoid ambiguities and not torture the language so as to create them. *See St. Paul Fire & Marine Ins. Co. v. United States Fire Ins. Co.*, 655 F.2d 521, 524 (3d Cir.1981).

An insurer's duty to defend arises "whenever the complaint filed by the injured party may potentially come within the policy's coverage." *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir.1985). If the factual allegations of the complaint, taken as true, state a claim to which the policy potentially applies, "the insurer must defend the case until it [can] confine the claim to a recovery that the policy [does] not cover." *Cadwallader v. New Amsterdam Cas. Co.*, 396 Pa. 582, 590, 152 A.2d 484, 488 (1959). To determine whether a claim may be covered, the court must ascertain the scope of the insurance coverage, and then analyze the allegations in the complaint. *See Britamco Underwriters, Inc. v. Grzeskiewicz*, 433 Pa.Super. 55, 59, 639 A.2d 1208, 1210 (1994).

An insurer's duty to defend is separate and distinct from its duty to indemnify.

*See Erie Ins. Exch. v. Transamerica Ins. Co.*, 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987). The duty to defend is broader than a duty to indemnify. The duty to indemnify arises only when the insured is found to be liable for damages covered by the policy. The burden of proving that a particular claim falls within the coverage of a policy is on the insured. *See id.* at 580, 533 A.2d at 1366–67.

■ The scope of National Union's obligation to indemnify and defend its insureds is defined in the umbrella policy section entitled: "Insurance Agreements I. Coverage." This section of the policy provides:

> We will pay on behalf of the Insured those sums in excess of the Retained Limit that the *Insured becomes legally obligated to pay by reason of liability imposed by law or assumed by the Insured under an Insured Contract* because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy period and is caused by an Occurrence happening anywhere in the world.

J.A. at 410 (emphasis added).

Because Jacobs is seeking coverage for its contractual indemnity obligation to Pennzoil, rather than direct liability to NPS Energy employees, the issue is whether contractual indemnity qualifies as an "Insured Contract" under the umbrella policy. The District Court acknowledged that, upon first inspection, the policy seems to provide coverage to *any insured* for liability that it assumed pursuant to an indemnity contract. However, the court went on to explain that "Insured Contract" applies only to contracts or agreements entered into by named insureds. Specifically, the umbrella policy defines "Insured Contract" as

any oral or written contract or agreement entered into by *you* and pertaining to *your* business under which *you* assume the tort liability of another party to pay for **Bodily Injury, Property Damage, Personal Injury or Advertising Injury** to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

J.A. at 413 (bold in original, emphasis added). The introductory provision of the policy makes clear that the word "you" in the definition of insured contract refers only to the named insured. It provides that "[t]hroughout this policy, the words 'you' and 'your' refer to the **Named Insured** as defined in Insuring Agreement IV, Definitions." *Id.* at 410, 533 A.2d 1363 (bold in original). Thus, according to the District Court, the clear and unambiguous language of the umbrella policy does not provide coverage for liability that an *additional insured*, such as Jacobs, assumes pursuant to an indemnity agreement.

Our careful review of the District Court's interpretation of the insurance policy finds it to be well-reasoned and without error. We find Jacobs' arguments to the contrary unpersuasive. First, Jacobs contends that a statement by NPS Energy's broker that the National Union policies covered claims against Jacobs for contractual indemnity contradicts the District Court's restrictive interpretation of the umbrella policy. Jacobs maintains that the broker's statement represents its reasonable expectations regarding the type of coverage being provided by National Union.

We believe that the clear and unambiguous definition of "Insured Contract" in the umbrella policy defeats Jacob's argument that it reasonably expected broader coverage under the National Union policy than permitted by the District Court. More-

over, the broker's statement is extrinsic evidence. In the absence of ambiguity, the interpretation of an insurance policy must focus upon the terms of the agreement itself rather than extrinsic evidence. *See John Wyeth & Brother, Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1075 (3d Cir.1997). Because we agree with the District Court that the scope of the umbrella policy's coverage is clear and unambiguous, we decline to review this evidence.

Next, Jacobs contends that the District Court erroneously interpreted the terms "you" and "your" in the definition of "Insured Contract." Specifically, Jacobs argues that, although the policy expressly provides that "the words 'you' and 'yours' refer to the Named Insured," these terms are not limited to named insureds. Jacobs reasons that "refers" does not connote an exclusive, limited definition. According to Jacobs, had the policy intended such a limitation, it would have used the term "means," which indicates a specific definition, rather than "refers," which does not. We agree with Jacobs that "means" and "refers" have different meanings. Webster's Dictionary defines "means" as "to serve or intend to convey, show, or indicate: signify." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 736 (9th ed. 1988). In contrast, it defines "refers" as "to think of, regard, or classify within a general category or group" and "to have relation or connection: relate." *Id.* at 988. However, we do not believe that the District Court incorrectly interpreted the terms. The policy employs the term "means" to provide a specific definition of a term ("Insured Contract") in the policy. In contrast, the policy's use of the term "refers" simply links "you" and "yours" to "named insured," a term that is already defined elsewhere in the policy. The District Court's application of these terms is not inconsistent with the above distinction.

Thus, this argument is likewise without merit.

Finally, Jacobs contends that the District Court's restriction of contractual liability coverage to named insureds creates an ambiguity within the terms of the primary policy and therefore is erroneous.[6] Specifically, Jacobs maintains that limiting the applicability of "you" and "your" to contracts entered into by named insureds renders section 8f.(3) of the primary policy superfluous. Section 8f.(3) follows the primary policy's definition of "Insured Contract," which, like the umbrella policy, uses the terms "you" and "your" in describing coverage. Jacobs argues that "you" and "your" cannot be limited to named insureds because section 8f.(3) provides that an "Insured Contract" "does not include that part of any contract or agreement: . . . [u]nder which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services. . . ." J.A. at 344. Jacobs contends that by carefully defining the circumstances in which coverage is not extended to insureds who provide professional-type services, National Union acknowledged that all other insureds receive coverage.

Once again, we do not agree. Like the District Court, we do not think the provisions of the primary policy are relevant because its limits were exhausted. However, even if that policy were applicable, section 8f.(3) merely narrows the definition of an "Insured Contract." In other words, under section 8f.(3), an insured, whether named or additional, is not covered for contractual liability if he or she is an architect, engineer or surveyor who assumed liability for injury arising out of personal services. Thus, it does not expand the primary policy's coverage beyond named insureds. Accordingly, this argument is also insufficient to satisfy Jacobs' burden to demonstrate that its contractual indemnity obligations fall within the purview of the umbrella policy.

## IV. Conclusion

For the foregoing reasons, we will reverse the order of the District Court granting partial summary judgment to Jacobs, and will affirm the order of the District Court granting partial summary judgment to NSP Energy and summary judgment to National Union.

---

6. Jacobs concedes that the primary policy has been exhausted and is no longer at issue in this matter. It contends, however, that a provision in the umbrella policy states that its coverage cannot exceed coverage in the primary policy. Thus, Jacobs argues that the language of the primary policy is relevant.