

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2007

# Mallalieu-Golder Ins v. Exec Risk Indemnity

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3806

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Mallalieu-Golder Ins v. Exec Risk Indemnity" (2007). *2007 Decisions.* Paper 203.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/203

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3806

———————

MALLALIEU-GOLDER INSURANCE AGENCY, INC.

v.

EXECUTIVE RISK INDEMNITY, INC;
PREMIUM FINANCE TRUST INVESTORS FUND

Premium Finance Trust Investors Fund,

Appellant

———————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 03-cv-01155)
District Judge:  Hon. James F. McClure, Jr.

———————————

Submitted under Third Circuit LAR 34.1(a)
on September 24, 2007

Before:  AMBRO, JORDAN and ROTH, <u>Circuit Judges</u>

(Opinion filed November 20, 2007)

OPINION

**ROTH,** Circuit Judge:

Mallalieu-Golder Insurance Agency (Mallalieu) sought a declaratory judgment that certain class action judgments against Mallalieu and in favor of the Premium Finance Trust Investors Fund were covered under a professional insurance policy issued to Mallalieu by Executive Risk Indemnity, Inc. The District Court granted Executive Risk's motion for summary judgment on the ground that the claims alleged in the class action suits did not fall within the policy. Premium Finance Trust Investors Fund, which was joined as a defendant in the action, appeals.[1] For the reasons set forth below, we will affirm the judgment of the District Court.

## I. **Background and Procedural History**

Appellant Premium Finance Trust Investors Fund is an association of individuals who were successful class action plaintiffs in litigation against Mallalieu. These individuals were investors in promissory notes issued by Premium Finance Trust, which was created by Lawrence Fiorini, the former principal of Mallalieu, for the purpose of financing premiums for policies sold by Mallalieu. Essentially, the investors loaned Premium Finance Trust

---

[1]Although the brief indicates that both Mallalieu and Premium Finance Trust Investors Fund appeal the District Court's order, a Notice of Appeal was filed only on behalf of Premium Finance Trust Investors Fund.

money in return for a promise by Premium Finance Trust to pay back the principal plus interest.[2] The promissory notes identified the maker of the note as "Premium Finance Trust, a wholly-owned subsidiary of Mallalieu-Golder Insurance Agency, Inc."

The record does not make clear whether Premium Finance Trust was in fact a separate subsidiary of Mallalieu, but it suggests that Fiorini might have used Premium Finance Trust to perpetrate a fraud. Cash generated through Premium Finance Trust was transferred to Mallalieu to pay Mallalieu's operating expenses. At some point, Premium Finance Trust ceased to finance premiums at all. After Fiorini died in 2002, the Mallalieu Vice President determined that Premium Finance Trust was grossly underfunded. He notified the Federal Bureau of Investigation and sent a letter to the holders of the promissory notes indicating that, while the investigation was pending, neither principal nor interest would be paid. Following that letter, three class action suits were brought by various investors in Premium Finance Trust.

Mallalieu sought a defense and indemnity from Executive Risk with respect to all three of those actions. Mallalieu had bought an insurance policy from Executive Risk that provides, in part, that Executive Risk will pay for claims for "Wrongful Acts," defined to include "any actual or alleged act, error, omission, or breach of duty by an Insured solely in such Insured's performance of, or failure to perform, Professional Services." "Professional Services," in turn, is defined as, "only insurance services performed for others for a fee or commission . .

---

[2]A separate group of investors, who are not involved in the present dispute, financed insurance policies through Premium Finance Trust.

. including premium financing ...."

The District Court granted a motion for summary judgment brought by Executive Risk on the ground that the failure to make payments for promissory notes is not a "Professional Service."[3] Premium Finance Trust Investors Fund, which was joined as a defendant in Mallalieu's declaratory judgment suit, filed this timely appeal.

## II. Analysis

The District Court had jurisdiction under 28 U.S.C. § 1332(a)(1). We have jurisdiction under 28 U.S.C. § 1291.

Our review of a grant of summary judgment is plenary. *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc.*, 264 F.3d 365, 369 (3d Cir. 2001). Disposition of an insurance action on summary judgment is appropriate where there are no material facts in dispute. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004). "'The interpretation of the scope of coverage of an insurance contract is a question of law . . . over which [this Court] exercise[s] plenary review.'" *Id.* (citations omitted).

Pennsylvania law governs our interpretation of the insurance policy in this case. Under Pennsylvania law, the insured bears the burden of proving that a particular claim falls within the coverage of the policy. *Jacobs*, 264 F.3d at 376.

"We read [insurance] policies to avoid ambiguities, if possible." *Westport Ins. Corp.*

---

[3]The District Court rejected Executive Risk's two other grounds for summary judgment: (1) that Premium Finance Trust was neither a named insured nor an "Insured Subsidiary" covered by the policy and (2) that Mallilieu did not incur a "Loss" as defined by the policy.

4

*v. Bayer*, 284 F.3d 489, 496 (3d Cir. 2002). "An ambiguity exists where the questionable term or language, viewed in the context of the entire policy, is 'reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Pilosi*, 393 F.3d at 363. The mere fact that the parties disagree upon the proper construction of a policy does not render the policy ambiguous. *Id.* at 364.

On appeal, Premium Finance Trust Investors Fund argues that the lack of any definition for "premium financing" renders the policy ambiguous. Premium Finance Trust Investors Fund and Mallalieu argue further that the activities targeted by the class action suits all arose out of Mallalieu's financing activities, involved "premium financing," and as such are covered under the policy.

While it is true that the policy does not define "premium financing," the policy makes clear that Executive Risk will only pay claims for "Professional Services," which is defined to include only "insurance services." "Premium financing" is identified as a type of "insurance services."

The activities that were the subject of the class action lawsuit for which Mallalieu now seeks defense and indemnity (namely the issuance of promissory notes) are not "professional services" because they do not relate to the provision of "insurance services." Not every activity to raise funds by an insurance agency will constitute the provision of "insurance services" simply because an insurance company is involved. The allegations of the class action suits generally relate to the issuance of promissory notes, and individual other acts and omissions in connection with the issuance of promissory notes (including the provision of

5

information regarding Premium Finance Trust). The investors purchased the notes for the purpose of obtaining a return, not to finance insurance premiums.[4] None of the investors financed insurance premiums through Premium Finance Trust or Mallalieu. Because the activities that formed the basis of the class action suits are not the performance or failure to perform "insurance services," they are not covered by the plain language of the policy.

## III.  Conclusion

For the reasons set forth above, we will affirm the judgment of the District Court.

---

[4]In its brief, Premium Finance Trust Investors Fund claims (with no cite to the record) that Mallalieu advised the investors that the investments would be used to finance premiums for Mallalieu customers. Even if that were the case, it does not change the fact that the investors provided money for the promissory notes in order to obtain a return on their investment, not to finance insurance premiums. Arguably, the investors did not care how Mallalieu used the funds so long as they obtained the promised return.

6