**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 15-2805

———————————

AUDUBON ENGINEERING COMPANY LLC;
AUDUBON ENGINEERING SOLUTIONS LLC,

v.

INTERNATIONAL PROCUREMENT AND CONTRACTING GROUP LLC,
Appellant

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(D.C. No. 1-13-cv-01248)
District Judge: Hon. Leonard P. Stark

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
March 23, 2016

———————————

Before: GREENAWAY, JR., VANASKIE, and SHWARTZ, <u>Circuit Judges</u>.

(Opinion Filed: April 27, 2016)

———————————

OPINION*

———————————

SHWARTZ, <u>Circuit Judge</u>.

———————————

     * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

International Procurement and Contracting Group, LLC ("IPCG") appeals from the District Court's order granting summary judgment for Audubon Engineering Company, LLC and Audubon Engineering Solutions, LLC (collectively, "Audubon") on Audubon's breach of contract claim arising from IPCG's failure to pay for services Audubon rendered. We will affirm.

I

IPCG is a U.S. headquartered company that connects U.S. suppliers of goods and services with "clients in the Middle East." App. 273. Audubon is an American engineering firm. IPCG and Audubon entered into an agreement with each other to provide engineering design services to North Refineries Company ("NRC") in connection with the construction of a liquefied petroleum gas ("LPG") unit in Iraq (the "LPG Project"). IPCG filed suit against Audubon in the United States District Court for the Eastern District of Michigan, alleging that Audubon breached the agreement. See Compl., Int'l Procurement & Contracting Grp., LLC v. Audubon Eng'g Co., LLC, No. 5:11-cv-14740 (E.D. Mich. Oct. 27, 2011), ECF No. 1.

IPCG and Audubon entered into a Settlement Agreement and Mutual Release (the "Agreement") resolving that case, pursuant to which Audubon agreed to perform certain engineering and design services for the LPG Project. The Agreement makes clear that "[t]he payment terms, dates, and services to be performed [by Audubon]" are governed by a proposal (the "Proposal") attached to the Agreement. App. 67. The Proposal sets forth a "Milestone Payment Schedule," which includes three separate "Contracts," each of which is divided into several "Milestones." App. 90. Each Milestone includes a series

2

of discrete tasks, the completion of which entitles Audubon to partial payment of its total fee.

IPCG awarded Audubon the first Contract described in the Proposal—"Contract #1"—but reserved the right to deny Audubon subsequent Contracts. App. 67. Consistent with the terms of the Proposal, IPCG paid Audubon for completing "Milestone #1," which Audubon accomplished simply by obtaining Contract #1. App. 90. The instant dispute relates to the second and third Milestones under Contract #1, which required Audubon to furnish engineering drawings depicting the layout of the LPG unit's piping, electrical wiring, and instrumentation, among other components ("Milestone #2"), and to prepare "bid packages" to enable NRC to solicit bids from third-party vendors for construction materials and equipment ("Milestone #3"). App. 90, 163, 464.

Audubon submitted a series of Milestone #2 drawings to IPCG. In response, and although not required by that Milestone, IPCG requested that Audubon provide "native," or changeable, versions of the drawings, and modify the designs to include international rather than English-style units of measurement. App. 140. Audubon refused to provide IPCG with native versions, citing intellectual property concerns. For an additional fee, however, Audubon agreed to modify the designs to include international units of measurement, as memorialized in a "Change Order" signed by both parties. App. 154. After issuing the updated drawings, Audubon submitted an invoice to IPCG for Milestone #2, which IPCG paid in full a few weeks later.

Audubon then provided the Milestone #3 bid packages to IPCG and submitted an invoice in the amount of $560,320.00 (the "Invoice"), reflecting its fee for the Change

3

Order and Milestone #3.  IPCG indicated that it would not pay the Invoice until Audubon

provided native versions of the Milestone #2 drawings, as it had previously requested.

Audubon agreed to provide the native versions if IPCG signed a liability release form that

Audubon provided.  IPCG never signed the release, Audubon did not provide the native

drawings, and IPCG did not pay the Invoice.

Audubon filed suit against IPCG in the Delaware Superior Court for breach of

contract, seeking payment of the Invoice plus interest and attorneys' fees.  After IPCG

removed the case to the District Court and the parties completed discovery, Audubon

moved for summary judgment.  The District Court granted Audubon's motion,

concluding that IPCG "raised no genuine dispute of material fact as to whether Audubon

performed its obligations under the Agreement" and holding that IPCG breached its

obligation to pay for Audubon's services.  App. 8.  IPCG appeals.

II[1]

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332.  We have jurisdiction under 28 U.S.C. § 1291.  We exercise plenary review over a district court's order granting summary judgment.  Jacobs Constructors, Inc. v. NPS Energy Servs., Inc., 264 F.3d 365, 369 (3d Cir. 2001).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the nonmoving party, and "material" only if it might affect the outcome of the suit under governing law. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In making this determination, we "view all of the facts in the light most favorable to the non-moving party," and afford the non-moving party "'every reasonable inference that can be drawn from the record.'"  Reedy v. Evanson, 615 F.3d 197, 210 (3d Cir. 2010)(quoting Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000)).

4

The District Court correctly concluded that there are no genuine disputes of material fact with respect to Audubon's performance of the Change Order and Milestone #3 and that IPCG breached its obligation to pay for these services. To begin, IPCG does not dispute that it authorized the Change Order and received updated drawings consistent with its terms. There is also no dispute that Audubon provided the Milestone #3 bid packages to IPCG, nor is there any contemporaneous evidence that IPCG or NRC believed the bid packages to be incomplete.[2]

IPCG maintains that there exists a genuine dispute of material fact with respect to Audubon's performance of Milestone #3 notwithstanding this failure of proof, citing the deposition testimony of its former Chairman, Shakir Alkhafaji. Alkhafaji, deposed two years after the fact, testified that "whatever Audubon gave [IPCG], NRC rejected it as incomplete." App. 350. Alkhafaji also testified that "Audubon did not complete [its] work," causing "NRC to reject it and ask for . . . more documents." App. 363. While this testimony suggests that IPCG and NRC were dissatisfied with Audubon's work product, we agree with the District Court that, in context, it is clear Alkhafaji was referring to the production of the Milestone #2 engineering drawings, for which IPCG paid Audubon in

---

[2] Other than an e-mail confirming receipt of the Milestone #3 bid packages, **see App. 163,** the record reveals no communications in which IPCG discussed them. To the extent IPCG asks us to construe its request for native drawings, or a separate, unfulfilled request for drawings for the LPG unit's "foundation" and "skids," App. 158, as evidence that Audubon failed to perform Milestone #3, we decline to do so. First, the Milestone Payment Schedule makes no mention of native drawings, and Milestone #3 makes no mention of drawings of any kind. Second, while the Milestone Payment Schedule makes reference to drawings of "equipment foundations" and "offskid instrument installation details," this work product is due under "Milestone #11" of Contract #3, App. 90, which Audubon had not been awarded.

5

full, or other work unrelated to the Milestone #3 bid packages. See App. 349-50 (Alkhafaji discussing Audubon's failure to provide "amine unit" designs and conceding that he is "not aware of engineering stuff" immediately before stating that NRC rejected Audubon's work as incomplete), 363 (Alkhafaji stating that Audubon did not accomplish the "first milestone," related to "engineering drawings," before stating that Audubon did not complete its work). Because the relevant issue here is Audubon's performance of the Change Order and Milestone #3, Alkhafaji's testimony does not create a genuine dispute of material fact concerning Audubon's entitlement to payment for that work.

IPCG's expert witness report also fails to present a genuine dispute of material fact. As the District Court correctly concluded, the report "falls well short of complying with the requirements of [Fed. R. Civ. P.] 26(a)(2)(B)." App. 7. Among its many deficiencies, the report fails to set forth the "facts or data considered by" IPCG's expert in forming his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). This is a material omission as it deprives Audubon of the means to determine the foundation for the opinion. Thus, even absent bad faith, this blatant non-compliance with Rule 26 justified the District Court's exercise of its discretion to decline to consider the report. See Caver v. City of Trenton, 420 F.3d 243, 265-66 (3d Cir. 2005).

Moreover, nothing in the report reveals that the expert reviewed the Milestone #3 requirements or addressed the packages that are the subject of Milestone #3. This Milestone requires Audubon to "[i]ssu[e] . . . Major Equipment Procurement Packages for [IPCG's] [p]urchase." App. 90. Elsewhere, in a section titled "Procurement," the Proposal states that Audubon is "to provide engineering and procurement services for

6

[the] development of procurement packages to [IPCG]" for it to send to vendors. App. 83. Thus, Milestone #3 addresses services associated with securing materials from vendors. Nothing in the expert's opinion discusses this subject and IPCG's assertion in its brief that "the discussion of 'package' in the [expert's] report is a reference to the bid packages," IPCG Br. 19, is neither evidential nor supported by the four corners of the report. Rather, the expert's reference to "package" is a reference to an attachment labeled "Basic Engineering Design Package," which lists engineering tasks a contractor would complete. App. 472. IPCG has identified nothing in that attachment as corresponding with the bid packages referenced in Milestone #3. Thus, given the absence of any indication the report discusses the Milestone #3 bid packages and its apparent focus on the native drawings and design materials, it is irrelevant to the instant dispute.

Finally, we address IPCG's claims about the import of NRC's role in this case. According to IPCG, Audubon "was heavily invested with, and committed to," NRC, and thus "[t]his dispute is really between Audubon and . . . NRC." IPCG Br. 7. This argument is unavailing. Under Delaware law,[3] our role in interpreting a contract "is to effectuate the parties' intent," and thus we give "[c]lear and unambiguous language . . . its ordinary and usual meaning." Lorillard Tobacco Co. v. Am. Legacy Found., 903 A.2d 728, 739 (Del. 2006) (internal quotation marks and citation omitted). The Agreement unambiguously defines only two "Parties" thereto, IPCG and Audubon. App. 65. NRC is not a signatory to the Agreement, and IPCG has adduced no evidence showing that

---

[3] There is no dispute that the "substantive issues [here] are controlled by Delaware law." Pierce Assocs., Inc. v. Nemours Found., 865 F.2d 530, 535 (3d Cir. 1988).

NRC is bound by its terms.  In any event, the Agreement's payment terms make clear that only IPCG is obligated to pay Audubon for its work on the LPG Project.  That IPCG did, in fact, pay Audubon for completing the first two Milestones bolsters this view and further undermines IPCG's assertion that it is nothing more than a middleman who was not responsible for paying Audubon for its work.

III

For the foregoing reasons, we will affirm the order of the District Court granting summary judgment for Audubon.[4]

---

[4] We also uphold the District Court's determination that Audubon is entitled to attorneys' fees pursuant to Paragraph 11 of the Agreement, which provides that the prevailing party in "any action to enforce, interpret, or challenge the terms of [the] Agreement . . . shall be entitled to recover its attorneys' fees and court costs, along with other reimbursable litigation expenses."  App. 70.  First, IPCG waived its right to present arguments as to whether Audubon is entitled to an award under that clause because it presented no arguments on this subject to the District Court.  See Harris v. City of Phila., 35 F.3d 840, 845 (3d Cir. 1994) (noting the well-established rule that this Court will not consider arguments "raised for the first time on appeal").  Second, even if IPCG's arguments are not waived, Paragraph 11 "plainly appl[ies]" to the instant dispute, App. 10, as Audubon seeks to enforce payment of obligations imposed on IPCG by the Agreement and has succeeded in doing so.  Thus, Audubon is a prevailing party that is contractually entitled to attorneys' fees.  See SIGA Techs., Inc. v. PharmAthene, Inc., 67 A.3d 330, 352 (Del. 2013) ("In contract litigation, where the contract contains a fee-shifting provision, we will enforce that provision.").