Randy A. FOREMAN, Plaintiff,

v.

EXXON CORPORATION, Defendant Third-Party Plaintiff Appellee Cross-Appellant,

v.

DIAMOND M COMPANY,
Defendant-Appellee,

Offshore Casing Crews, Inc., Third-Party Defendant-Appellant Cross-Appellee.

No. 84–3094.

United States Court of Appeals,
Fifth Circuit.

Sept. 12, 1985.

Randall K. Theunissen, Lafayette, La., for plaintiff.

Weigand & Siegrist, Joseph J. Weigand, Jr., Houma, La., for Diamond M.

Gene S. Palmisano, New Orleans, La., for Exxon.

Before JOHNSON, JOLLY, and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

The issue presented on this appeal is whether Exxon Corporation (Exxon) is entitled to receive indemnification from Offshore Casing Crews, Inc. (Offshore), pursuant to their contract, not only for amounts Exxon paid to plaintiff directly as a result of its share of fault in causing plaintiff's injury but also for amounts Exxon paid to Diamond M Company (Diamond M) as a result of Exxon's contractual agreement with Diamond M to indemnify Diamond M for its share of fault in causing plaintiff's injury. The district court determined that Offshore is required to indemnify Exxon for the amounts for which Exxon is directly liable to the plaintiff; the court also determined, however, that Offshore is not required to indemnify Exxon for the amounts which Exxon owes in contractual indemnity to Diamond M. We agree and affirm the district court.

### I. *Procedural History*

Plaintiff, Randy Foreman, an employee of Offshore, brought this action against Exxon and Diamond M for personal injuries he sustained while working on a fixed platform located in the Gulf of Mexico off the coast of Louisiana. The platform was owned by Exxon and the drilling rig that was located atop the platform was owned by Diamond M.

Prior to the date of the incident giving rise to Foreman's injuries, Exxon had contracted with both Diamond M and Offshore to perform services aboard its platform. The contract with Diamond M for performance of drilling services was executed on July 15, 1975. The contract with Offshore

for installation of well casing pipe was executed thereafter on January 12, 1976.

Subsequent to Foreman's initial action against Exxon and Diamond M (the principal claim) and pursuant to the terms of the Exxon-Diamond M contract, Diamond M filed a cross-claim against Exxon for indemnity and/or contribution relative to any sums for which Diamond M might be liable to Foreman;[1] Exxon also filed a similar cross-claim against Diamond M (the cross-claims). In addition, pursuant to the Exxon-Offshore contract,[2] Exxon filed a third-party complaint against Offshore seeking indemnity for (a) any sums for which Exxon might be liable directly to Foreman for its negligence and (b) any sums for which it was required to indemnify Diamond M (the third-party complaint). Further, Northwestern Insurance Company (Northwestern) filed a complaint in intervention to recover benefits paid to Foreman pursuant to the Longshoremen's and Harbor Workers' Compensation Act. The parties went to trial on these three issues: the principal claim, the cross-claims and the third-party complaint.

After trial on the issue of liability, the jury found that Exxon, Diamond M, and Offshore were negligent and that each contributed to the accident which caused Foreman's injuries. The district court then submitted to the jury a special interrogatory asking the jury to apportion the negligence as between Exxon, Diamond M and Offshore.[3] The jury found Exxon, Diamond M and Offshore to be negligent with respect to Foreman in the following proportionate degrees: Exxon—10%; Diamond M—55%; and Offshore—35%.

After trial on the issue of damages and prior to the conclusion of the jury's deliberations, the parties reached a settlement agreement with respect to the quantum of damages recoverable by Foreman. Specifically, the parties agreed that Foreman would receive $323,000 in a settlement fund and that Northwestern would be paid $23,000 from this fund. They further agreed that the district court would decide the contractual indemnity issues that were the basis of the cross-claims and of the third-party complaint. In addition, all parties reserved their right to appeal to this Court.[4]

The district court then issued its reasons for judgment setting forth its decision on the contractual issues. The court noted that the jury had found the parties at fault in the proportionate degrees above set out and proceeded to review various indemnity provisions of the Exxon-Diamond M contract and the Exxon-Offshore contract. The court then concluded that Offshore was obligated to contribute 45% of the settlement fund: this contribution represents 35% attributable to Offshore's fault and 10% attributable to Exxon's fault for which Offshore contractually agreed to indemnify Exxon. In addition, the court concluded that Exxon was obligated to contribute the remaining 55% of the settlement fund: this contribution represents the percentage of fault attributable to Diamond M for which Exxon contractually agreed to indemnify Diamond M. The court did not allow Exxon indemnity from Offshore for this 55%

1. *See infra* note 8.

2. *See infra* note 7.

3. Offshore objected to its inclusion in the jury interrogatory because it was not a defendant in the principal claim and because it was immune as Foreman's employer. *See infra* Part II. Overruling the objection, the district court stated that the apportionment of the various degrees of negligence "is not going to determine how the money is going to be paid. But in view of the contracts, I have to find the percentage of fault." Explaining its position more concisely, the court later indicated that "a determination

by the Court on the contractual indemnity issues necessitated a finding by the jury, as trier-of-fact, relative to Offshore's fault or negligence."

4. The settlement agreement also provided that should the district court's determination of each party's proportionate contribution to the settlement fund be reversed and/or reapportioned on appeal, then the party who had underpaid the settlement would reimburse the party who had overpaid the settlement to the extent of the overpayment and legal interest from the date the settlement was funded.

contribution that Exxon was assessed; it found that Offshore had agreed only to indemnify Exxon for Exxon's direct liability and that Offshore had not agreed to assume Exxon's contractual liability to Diamond M pursuant to the Exxon-Diamond M contract.

Offshore then timely perfected its appeal from the district court's judgment arguing that the 35% of fault assigned to it should have been apportioned between Exxon and Diamond M and that it should not have been required to indemnify Exxon for Exxon's direct liability to Foreman under the contractual indemnity terms of the Exxon-Offshore contract. Exxon filed a cross-appeal arguing that Offshore should have been requried to indemnify it for amounts it owes Diamond M under the contractual indemnity terms of the Exxon-Diamond M contract.

## II. *Apportionment of Fault*

■ Offshore contends that the district court erred in submitting a special interrogatory to the jury that requested an apportionment of fault between not only Exxon and Diamond M, defendants, but also Offshore, third-party defendant. Because it was not a tort defendant, Offshore argues, the jury should have been required to apportion fault between Exxon and Diamond M only. In response to Offshore's objection to submission of the special interrogatory, however, the district court stated, "this [the special interrogatory] is not going to determine how the money is going to be paid. But in view of the contracts, I have to find the percentage of fault." Submission of the special interrogatory was not error, as the district court observed, because disposition of the contractual indemnity claims necessitated a jury finding on Offshore's percentage of fault.

■ Nevertheless, despite the district court's correct reasoning for submitting the special interrogatory and despite Exxon's acknowledgement that "the District Judge, and all of the parties to this suit, clearly recognized that Offshore is immune from tort liability by virtue of its status as the employer of Plaintiff, and its payment to him of compensation benefits," the court erroneously determined that Offshore should bear the burden for 35% of the settlement fund in accordance with the 35% of fault assigned it by the jury. To support its determination, the court stated that "although Offshore could not have been held directly liable to the plaintiff, absent its agreement to compromise, its potential exposure under the indemnity agreements was significant." We find that neither "potential exposure under the indemnity agreements" nor the settlement agreement permitted the district court to impose upon Offshore the obligation to pay any portion of the settlement fund as a result of its fault in causing Foreman's injury.

Contrary to Exxon's assertion in its brief on appeal that Offshore is precluded from asserting its tort immunity, the parties to the settlement agreement did not reserve their right to appeal *"only* as to contractual issues." The agreement does not so limit that which may be appealed; rather, it operates as a protection from any waiver of the right to appeal. Further, notwithstanding the district court's assertion that a determination by the jury of Offshore's percentage of fault would not "determine how the money was going to be paid," the court did require Offshore to contribute to the settlement fund the same percentage of the fund as the percentage of Offshore's fault. *The court did so after ruling on the* contractual issues. Thus, the settlement agreement could not effectively preclude Offshore from asserting its tort immunity on appeal when the court imposed tort damages against Offshore *after* the settlement agreement was signed. Accordingly, we conclude that the district court should have first determined the proper apportionment of negligence as between defendants Exxon and Diamond M before apportioning the settlement fund.

■ Notwithstanding the district court's implication that the 35% share of the settlement fund imposed upon Offshore represents some undefined contractual exposure, the court, without further explanation, held Offshore was liable to pay, as tort dam-

ages, the exact percentage of the settlement fund as its percentage of fault as found by the jury. It is well established, however, that because of Offshore's status as employer of Foreman and because Foreman is subject to the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. §§ 901–950, employees' compensation represents the exclusive liability of Offshore to Foreman. 33 U.S.C. § 905(a). "[T]he Act's exclusive liability provision effectively abrogates any independent tort liability of the employer to its employees...." *Ocean Drilling and Exploration Co. v. Berry Brothers Oilfield Service, Inc.*, 377 F.2d 511, 514 (5th Cir.), *cert. denied*, 389 U.S. 849, 88 S.Ct. 102, 19 L.Ed.2d 118 (1967); *see also Peters v. North River Ins. Co.*, 764 F.2d 306, 310 (5th Cir.1985) ("The Act ... den[ies] third parties a right of contribution or indemnity from the employer even when the employer is at fault...."). Consequently, Offshore should not have been required to pay, as tort damages, 35% of the settlement fund.

In *Wallace v. Oceaneering Int'l.*, 727 F.2d 427, 437 (5th Cir.1984), upon concluding that one of three defendants found negligent should have been granted a directed verdict, we stated:

> Because the district court found each of Oceaneering, Zapata, and Cities Service to be liable to Wallace for the full amount of his damages found by the jury, and Cities Service has now been exonerated by us, Oceaneering and Zapata remain so bound. As between themselves, Oceaneering and Zapata must bear proportionately the 5% of responsibility that the jury attributed to Cities Service. Because Oceaneering was found 60% liable and Zapata 35% liable, Oceaneering will now bear approximately 63.2% of the total damages, and Zapata will bear the other approximately 36.8%.

Similarly, here we decline to remand this action for a redetermination of the respective percent of the settlement fund to be paid by Exxon and Diamond M.[5] Exxon and Diamond M must bear proportionately the 35% fault that the jury attributed to Offshore. Accordingly, because Exxon was found 10% liable and Diamond M 55% liable, Exxon will now bear approximately 15.4% of the total damages and Diamond M will bear the other approximately 84.6%.

### III. *Offshore's Indemnity Obligation for Exxon's Direct Liability to Foreman*

Offshore argues that the first paragraph of the indemnity provision of the Exxon-Offshore contract does not require that Offshore indemnify Exxon for amounts for which Exxon is directly liable to Foreman since the cause of action arose in favor of an Offshore employee who is expressly excluded from the operation of that paragraph.[6] Offshore fails, however, to read the indemnity provision in its entirety. The second paragraph of the indemnity provision provides that:

> Contractor [Offshore] further agrees to protect, indemnify and hold harmless Exxon, its agents, servants and employees from and against any and all claims, demands and causes of action of every kind which may be brought against them *by an employee of Contractor*, including any person judicially determined to be an employee of Contractor, on account of personal injury, illness, death or loss of services or damage to or loss of property where:
>
> > (a) The personal injury, illness, death or loss of services or damages to or loss of property in any way results from the willful or negligent acts or omissions of Contractor, Contractor's agents, employees representatives, or subcontractors, *whether or not such personal injury, illness, death or loss of or damage to property arose out of the joint and/or concurrent negli-*

---

**5.** Also, we note that at oral argument the parties indicated they would prefer a reapportionment by this Court of Offshore's 35% fault between Exxon and Diamond M rather than a retrial to determine the percentages of fault attributable to Exxon and Diamond M.

**6.** The first paragraph of the indemnity provision is set out in note 7, *infra.*

*gence of Exxon*, its agents, employees or representatives and/or the unseaworthiness of any vessel.... (emphasis added).

■ "In Louisiana, a contract is to be read according to its plain intendment," *Battig v. Hartford Accident & Indemnity Co.*, 608 F.2d 119, 120 (5th Cir.1979); La. Civ.Code Ann. arts. 1945, 1946 (West), and absent ambiguity contractual obligations are to be enforced as written. *Mills v. Zapata Drilling Co., Inc.*, 722 F.2d 1170 (5th Cir.1983). This additional indemnity provision unambiguously requires Offshore to indemnify Exxon for liability which Exxon incurs on claims by Offshore's employees for personal injury resulting from Offshore's negligence.

Based upon the jury's finding that Offshore was negligent, and despite the joint and/or concurrent negligence of Exxon, Exxon is entitled to indemnity for the amount for which it is directly liable to the plaintiff. Accordingly, Offshore must contribute to the settlement fund that percentage which Exxon would otherwise be required to contribute on account of its direct liability to Foreman, approximately 15.4%. *See supra* Part II.

### IV. Offshore's Indemnity Obligation for Exxon's Contractual Liability to Diamond M

■ The district court determined that Offshore was not required to indemnify Exxon for amounts Exxon owed pursuant to Exxon's contract of indemnity with Diamond M. On cross-appeal, Exxon argues that the first paragraph of the indemnity provision of the contract between Exxon and Offshore unambiguously provides for such indemnity and in the alternative that the parties intended to provide for such indemnity.[7] In doing so, Exxon relies upon *Mills v. Zapata Drilling Co.*, 722 F.2d 1170 (5th Cir.1983), and attempts to distinguish *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir.1981). Because we conclude that *Corbitt* is controlling and *Mills* is distinguishable, we affirm the district court's determination that Exxon is not entitled to indemnity for amounts for which it is liable to Diamond M pursuant to their indemnity agreement.[8]

■ Exxon contends initially that the district court erroneously applied federal maritime law rather than Louisiana law. That Louisiana law applies is not disputed. As we stated in *Mills:*

[I]t is incontrovertibly settled that when there occurs an injury on an offshore oil drilling platform positioned over the Outer Continental Shelf in the Gulf of Mexico at a point adjacent to the State of Louisiana, it is Louisiana state law which governs the relevant rights and duties of persons injured in or in any way affected by the accident, including the rights and duties under indemnity provisions in contracts applicable to those injured or to others.

722 F.2d at 1174. While the district court did find *Corbitt* applicable and while it specifically noted that *Corbitt* was decided under federal maritime law, it nevertheless concluded that no distinction exists "between the principles of the federal maritime law and those under the state law with regard to a determination of the is-

7. The first paragraph of the indemnity provision provides that:

Contractor further agrees to protect, indemnify, and hold harmless Exxon, its agents, servants and employees, from and against all claims, demands and causes of action of every kind and character arising in favor of Exxon's employees or third parties (third parties being defined for purposes of this provision as any party other than employee of Exxon or an employee of Contractor) for injury to or death or illness of persons or loss of or damage to property in any way resulting from the willful or negligent acts or omissions of Contractor,

Contractor's agents, employees, representatives, or subcontractors, whether or not such personal injury, illness, death or loss of or damage to property arose out of the joint and/or concurrent negligence of Exxon, its agents, employees, or representatives and/or the unseaworthiness of any vessel.

8. There is no dispute that the Exxon-Diamond M contract requires Exxon to indemnify Diamond M. Pursuant to our reapportionment, *see supra* Part II, as indicated this amount represents approximately 84.6% of the settlement fund.

sues presented here." Because the district court recognized that Louisiana law applies, we need only decide whether *Corbitt* is representative of Louisiana law and dispositive here.[9]

In *Weathersby v. Conoco Oil Co.*, 752 F.2d 953 (5th Cir.1984), we stated that:

> A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous. *Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 (5th Cir.1983) (applying federal maritime law); *Ogea v. Loffland Bros. Co.*, 622 F.2d 186, 189 (5th Cir.1980) (applying Louisiana law); *see also Day v. Ocean Drilling & Exploration Co.*, 353 F.Supp. 1350, 1351 (E.D.La.1973) (Rubin, J.). A court "should construe [an] indemnity clause to cover all losses 'which reasonably appear to have been within [the parties'] contemplation.'" *Kemp v. Gulf Oil Corp.*, 745 F.2d 921, 924 (5th Cir.1984) (quoting *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981)). Interpretation of the terms of a contract is a matter of law, reviewable *de novo* on appeal. *Id.; see also City of Austin v. Decker Coal Co.*, 701 F.2d 420, 425 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Matador Drilling Co. v. Post,* 662 F.2d 1190, 1195 (5th Cir.1981).

752 F.2d at 955–56. Our interpretation of the terms of the Exxon-Offshore contract leads us to conclude that, as in *Corbitt*, the parties did not intend to provide Exxon indemnification for Exxon's contractual liability to Diamond M.

In *Corbitt* the issue before this Court was identical to the issue presented here:

whether Shell was entitled to indemnification from its contractor (Sladco) pursuant to a Shell-Sladco indemnity agreement contained in a purchase order for amounts Shell was required to pay Diamond M pursuant to a Shell-Diamond M indemnity agreement. The Shell-Sladco indemnity agreement provided in pertinent part that:

> Contractor [Sladco] shall indemnify and defend Shell Oil Company and its employees and agents against all claims, suits, liabilities and expenses on account of injury or death of persons (including employees of Shell or Contractor, and sub-contractor and their employees) or damage of property arising out of or in connection with performance of this Order, and not caused solely by Shell's negligence without any contributory negligence or fault of Contractor or any sub-contractors.[10]

*Corbitt*, 654 F.2d at 351. Affirming the district court's judgment that Shell was not entitled to such indemnification, this Court stated that "express notice is required where a party seeks to shift his contractual liability to indemnify a third party" and then went on to state that:

> The Purchase Order, however, does not expressly provide that Sladco will indemnify Shell for Shell's contractual liability to third persons. The Sladco-Shell agreement simply provides for indemnity 'against all claims, suits, liabilities and expenses *on account of personal injury* . . . .'

(emphasis in original).

> But Shell's liability to Diamond M is not on account of personal injury. Rather, it is on account of its agreement to indemnify Diamond M . . . . Since the Purchase Order does not specifically provide that

---

**9.** We note here that, "[a] federal district court judge's determination on the law in his state is, as a rule, entitled to great weight on review." *Avery v. Maremont Corp.*, 628 F.2d 441, 446 (5th Cir.1980). Because we conclude that *Mills, supra,* is distinguishable, *see infra,* we further note that "where the state law is uncertain, we are hesitant to second guess the federal district court judge." *Avery,* 628 F.2d at 446. *Cf. Ducre v. Executive Officers of Halter Marine, Inc.,* 752

F.2d 976, 987 n. 26 (5th Cir.1985) ("This court has noted before the congruence of the indemnity principles of maritime tort law with those of Louisiana tort law.").

**10.** By comparing this indemnity provision with the analogous indemnity provision between Exxon and Offshore, *supra* note 7, a similarity in provisions is demonstrated.

Sladco assumes claims arising from Shell's own separate contractual obligations, such indemnification is not required.

*Corbitt,* 654 F.2d at 333.

Similarly, the agreement between Exxon and Offshore provides for indemnity "against all claims, demands and causes of action ... *for injury to or death or illness of persons* ... in any way resulting from the willful or negligent acts or omissions of Contractor...." (emphasis added) Exxon's argument that the language of the indemnity provision unambiguously provides that Offshore must reimburse Exxon for Exxon's contractual liability to Diamond M ignores the limiting language "for injury to or death or illness of persons." This language is identical, as a practical matter, to the limiting language in *Corbitt* —"on account of personal injury"—and should be accorded the same meaning and force.[11] Both limit the indemnitees to indemnity for claims based upon tortious, not contractual, injuries.

Further, Exxon argues that Offshore's agreement to indemnify it against *"all claims,* demands, and causes of action of every kind and character arising in favor of ... third parties" includes Diamond M's "third party" contractual claim against Exxon. (emphasis added) This argument ignores the fact, however, that in *Corbitt* we declined to read the phrase "all claims" to include contractual claims when that phrase was limited by language requiring some claim based "on account of personal

injury."[12] In *Corbitt,* we stated that "Shell's liability to Diamond M is not on account of personal injury. Rather, it is on account of its agreement to indemnify Diamond M...." *Id.* Similarly, Exxon's liability to Diamond M is not "for injury to ... persons;" rather, it is for, or the result of, its agreement to indemnify Diamond M. We find *Corbitt* indistinguishable from this action.

In addition, we find the reasoning in *Corbitt* equally applicable to the instant case. There, we stated:

Nor can it be said that Shell's contractual duty to indemnify Diamond M is the kind of liability which the parties to the Purchase Order intended to include within the scope of Sladco's duty to indemnify Shell. Apart from any contractual undertaking to the contrary, Sladco's exposure to liability for injuries sustained by its own employees would be limited by the relevant workers' compensation scheme. If Shell had intended that Sladco forego its limited liability for such injuries, Shell should have said so in clear, specific terms. In the absence of such explicit language, it is unreasonable to assume that Sladco intended to undertake such an unusual and surprising obligation.

*Corbitt,* 654 F.2d at 733. Similarly, we find no indication in the Exxon-Offshore contract that Offshore has accepted this unusual extension of its normal obligations.

---

11. We are not unmindful that the limiting language in the Exxon-Offshore contract—"for injury to persons"—differs from the limiting language in the contract in *Corbitt* —"on account of personal injury." This distinction, however, bolsters our conclusion that Offshore did not agree to indemnify Exxon for its contractual liability to Diamond M. Offshore agreed to indemnify Exxon as to all claims *for* personal injury rather than as to all claims *on account of* personal injury. Thus, the contract language in this action more specifically obligates Offshore to pay indemnity on claims based upon tort. Because Exxon's liability to Diamond M is contractual, not tortious, the language "all claims *for* personal injury" more forcefully compels the same conclusion here that was reached in *Corbitt.*

12. *See supra* note 10. Further:

[t]he obligation to indemnify is to be strictly construed, and the status of indemnitee is also interpreted narrowly. *Gulf Oil Corp. v. Mobile Drilling Barge or Vessel Margaret,* 441 F.Supp. 1 (E.D.La.1975), *aff'd,* 565 F.2d 958 (5th Cir.1978). Additionally, an indemnity agreement will be held to benefit a particular party only when it is express in that effect, and reflects the clear intent of the parties. *Day v. Odeco,* 353 F.Supp. 1350 (E.D.La.1973). *Marathon Pipe Line Co. v. Drilling Rig Rowan/Odessa,* 527 F.Supp. 824, 835–36 (E.D.La. 1981), *aff'd,* 699 F.2d 240 (5th Cir.1983).

Exxon also contends that our disposition of this appeal is controlled by *Mills, supra. Mills,* like this case, involved a contractual indemnity issue relating to an injury that occurred on the outer continental shelf off the Louisiana coast. The plaintiff in *Mills* was employed by Louisiana Casing Crew & Rental Tool Corporation (Louisiana) while working on a Shell rig. CNG was the operator of the rig and the plaintiff was killed by an employee of Zapata, a subcontractor of CNG. At issue in *Mills* was the effect of an indemnification provision in a contract between CNG and Louisiana which provided in pertinent part that:

> Contractor [Louisiana] agrees to indemnify and hold harmless ... any or all co-lessees of CNG [i.e., including Zapata] ... and any or all ... invitees ... of CNG [including Zapata] ... against any and all claims ... in which such co-lessees ... or ... invitees ... of CNG [including Zapata, which was a co-lessee as well as an invitee of CNG] may be named party defendant ... by any employee [Arland Mills] of Contractor [Louisiana], ... or the legal representative [Vicki Mills] ... of any such employee, in anywise arising out of or incident to the work to be performed under this contract....

*Mills,* 722 F.2d at 1174. Exxon argues that just as Zapata is identified as an "invitee" or "co-lessee" in *Mills,* so also is Diamond M identified as a "third party" in the indemnity provision at issue in this case. We decline to accept such an argument.

In *Mills,* unlike the indemnity agreement in this action, Zapata, as an "invitee" of CNG, was specifically named as an indemnitee of Louisiana. As we stated in *Mills,* "the Louisiana-CNG contract specifically provides ... that 'contractor [Louisiana] shall be responsible and CNG shall never be liable' for damages recoverable by an employee of Louisiana, or his representative, on account of an injury caused by the negligence of an employee of Zapata."

*Mills,* 722 F.2d at 1175. Diamond M, even if considered a "third party" as defined in the Exxon-Offshore contract, is not an indemnitee under the terms of the indemnity provisions here. Accordingly, we find *Mills* distinguishable in fact.[13]

■ We conclude that Offshore's obligation to indemnify Exxon for Exxon's contractual liability to Diamond M may arise only from the plainly expressed intention of the parties, spelled out in unambiguous terms. Louisiana law is clear that a contract of indemnity for one's own negligence can not be allowed unless the parties specifically, clearly and expressly agree to such. *Rivers v. Schlumberger Well Surveying Corp.,* 389 So.2d 807 (La.App.3d Cir.1980). In *Corbitt* we addressed this same requirement for indemnity of one's own negligence and we extended it to a case similar to ours. There we stated:

> A contract to indemnify another for his own negligence imposes an extraordinary obligation. Thus an indemnitor is entitled to express notice that under his agreement, and through no fault of his own, he may be called upon to pay damages caused solely by the negligence of his indemnitee. *For the same reasons express notice is required where a party seeks to shift his contractual liability to indemnify a third party.*

654 F.2d at 333 (emphasis added). *See also Scherff v. Missouri-Kansas-Texas Railroad Co.,* 449 F.2d 23 (5th Cir.1971). This reasoning applies with equal force to the issue before us under Louisiana law.

We believe that the district court properly interpreted the intent of the parties to this contract, and that it properly concluded that the parties failed to clearly and expressly provide that Offshore indemnify Exxon for Exxon's contractual liability to Diamond M.

> Generally, Louisiana law requires the Court to give legal effects to agree-

---

**13.** To the extent that the contract in *Mills* expressly provided that Zapata, as an invitee, was entitled to indemnity, *Mills* supports this Court's conclusion that the parties must expressly provide for indemnity of another's contractual indemnity exposure. Here, the contract between Exxon and Offshore evidences no such intent.

ments, according to the true intent of the parties. The true intent of the parties is to be determined by the clear and explicit terms of the agreements.

*Leenerts Farms, Inc. v. Rogers,* 421 So.2d 216, 218 (La.1982); La.Civ.Code Ann. art. 1945 (West 1977). Because we conclude that *Mills* is not dispositive here, and because we agree that the parties to this contract, like the parties to the contract in *Corbitt,* did not intend to shift to Offshore the contractual indemnity exposure of Exxon to Diamond M, we reject Exxon's cross-appeal. Exxon will be required to contribute approximately 84.6% of the proceeds comprising the settlement fund.[14]

The judgment of the district court is AFFIRMED in all respects except as to the apportionment of fault between Exxon, Diamond M and Offshore, as to which it is REVERSED. Accordingly, the cause is REMANDED to the district court with directions to reform its judgment reapportioning the percentage of Offshore's fault between Exxon and Diamond M pursuant to this opinion.

AFFIRMED in part; REVERSED in part and REMANDED.

---

**14.** *See supra* Part II. The reapportionment of the parties' share of the settlement fund should be effected pursuant to the terms of the settlement agreement, *see supra* note 4.