## AMERICAN HOME ASSURANCE COMPANY

v.

## LIBERTY MUTUAL INSURANCE COMPANY et al.

No. CIV.A. 02–3842.

United States District Court,
E.D. Louisiana.

June 18, 2004.

Nathan L. Schrantz, Simon, Peragine, Smith & Redfearn, LLP, Robert I. Siegel, Gieger, Laborde & Laperouse, LLC, New Orleans, LA, for American Home Assurance Company, plaintiff.

Kenneth Benjamin Krobert, Olinde & Dubuclet, Metairie, Judy Y. Barrasso, Brian Joseph Capitelli, Barrasso Usdin Kupperman Freeman & Sarver, LLC, New Orleans, Frank M. Walker, Jr., H. David Vaughan, II, Plauche, Smith, & Nieset, Lake Charles, LA, for Liberty Mutual Insurance Company, Lumberman's Mutual Casualty Company, Helmsman Insurance Agency, Inc., defendants.

### ORDER AND REASONS

LEMMON, District Judge.

**IT IS HEREBY ORDERED** that Lumbermens Mutual Casualty Company's motion for summary judgment is **DENIED**. (Document # 18.)

**IT IS FURTHER ORDERED** that the cross motion for summary judgment of The Transporter, Inc. and The Insurance Company of the State of Pennsylvania is **GRANTED**. (Document # 20.)

### I. BACKGROUND

On January 7, 2001, Howard Dwayne Godeaux was killed in an accident when the 18–wheel tractor trailer he was driving was struck by a renegade tire and rim from a long-haul container trailer (the trailer) that came loose and crossed the median on Interstate 10. The trailer that lost the tire and rim was owned by Dana Transport, Inc. and/or Dana Leasing Systems, Inc. (Dana) and leased to Crowley Maritime/Crowley Liner Services, Inc./Crowley Marine Services, Inc. d/b/a Crowley Marine Transport (Crowley). American Home Assurance Company (American Home) is Dana's insurer. Lumbermens Mutual Casualty Company (Lumbermens) is Crowley's insurer. Dana is an additional insured on the Lumbermens policy as the owner/lessor of the trailer leased to Crowley.

Crowley had entered into an "Equipment Interchange Agreement" (the agreement) with The Transporter, Inc. (Transporter), which set forth their respective obligations when Transporter possessed and operated Crowley's equipment. Transporter was operating the trailer at the time of the accident.

In addition to the lease arrangement, Dana entered into an agreement with Crowley to provide garage operations to Crowley as needed in those parts of the country where Crowley did not operate its own garage facilities.[1] Liberty Mutual Insurance Company (Liberty) issued a policy of Garage Liability to Dana, providing coverage for garage operations and bodily injury caused by an accident resulting from Dana's repair operations.

Several days prior to the accident, Crowley called upon Dana to repair a leaking wheel seal. Dana completed the repair, and Crowley paid for the invoice for the repair. Dana failed to conduct a proper inspection, and that failure contributed to the accident.

Godeaux's survivors filed a suit against Crowley and others, alleging *inter alia* that the repair of the leaking wheel seal was negligently performed and that the loose wheel caused the accident that killed Godeaux. Crowley demanded its defense and indemnity from Transporter and Transporter's insurer, The Insurance Company of the State of Pennsylvania (ICSP), pursuant to Part 3 of the agreement between Crowley and Transporter.

---

1. The trailer maintenance services were performed by another Dana entity, Dana Container.

On August 6, 2002, a settlement was reached through mediation. American Home contributed $1,000,000 and reserved their rights against Liberty and Lumbermens, as Dana's co-insurers, to pursue contribution and bad faith claims for willful failure to contribute. *See* Compromise Settlement Agreement at 9, § 15. The Transporter and ICSP contributed $2,040,666.66, and the claims against Crowley and Lumbermens were dismissed. Lumbermens attended the mediation, but did not pay any part of the settlement. Liberty did not participate in the mediation or offer to pay any part of the settlement.

American Home filed a complaint for a declaratory judgment against Lumbermens and Liberty to recover the $1,000,000 settlement paid on behalf of Dana for the negligent repair shop operation and the owner/lessor liability.[2] American Home alleges that Liberty provides coverage for the negligent repair, and Lumbermens provides coverage for Dana as an additional assured under the Commercial Lines policy issued to Crowley.

Lumbermens filed a third-party complaint against Transporter and ICSP seeking reimbursement of defense costs and indemnity under their agreement if Lumbermens is found liable to American Home. Lumbermens filed a motion for summary judgment on the third-party complaint, and Transporter and ICSP filed a cross-motion for summary judgment.

## II. DISCUSSION

### A. Summary judgment standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 809 (5th Cir.1991); Fed.R.Civ.P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

### B. Obligations under the agreement

Lumbermens contends that the agreement in place at the time of the accident required the Transporter to provide defense and indemnity to Crowley, its related entities, and its insurers. Pursuant to the agreement, ICSP unconditionally provided defense and indemnity and ultimately funded the settlement with the plaintiffs in the underlying litigation. Lumbermens argues that, because Transporter and ICSP already unconditionally accepted the defense and indemnity pursuant to the same documents arising out of the same casualty, they are required to provide defense and indemnity in the present American–Home litigation.

Transporter and ICSP contend in their cross-motion for summary judgment that American Home is proceeding against Lumbermens in its role as insurer of the Dana entities under Lumbermens' Crowley policy. Transporter and ICSP argue that the agreement between Transporter and Crowley does not require them to defend and indemnify the Dana entities or their insurers or Crowley's insurers against third-party contractual claims.

---

2. American Home alleges that its "completed operations exclusion" excludes coverage for bodily injury or property damage arising out of Dana's repair operation after that work has been completed or abandoned and that there is no coverage for the allegations relating to the repair operation. The present motion for summary judgment does not resolve any claims raised by American Home.

Transporter and ICSP argue that they have done all that is required under the agreement: ICSP issued the policy providing $1,000,000 business auto coverage, the limits of which were exhausted in the Godeaux settlement; issued a liability policy with limits of $4,000,000 in excess of the underlying policy; and paid over $2,040,000 to compromise the claims against Crowley entities and Transporter in the underlying lawsuit.

■■■ "Indemnity in its most basic sense means reimbursement, and may lie when one party discharges a liability which another rightfully should have assumed." *Nassif v. Sunrise Homes, Inc.*, 739 So.2d 183, 185 (La.1999) (citing 42 C.J.S. *Indemnity* § 2 (1991)). "The obligation to indemnify may be express, as in a contractual provision, or may be implied in law, even in the absence of an indemnity agreement." *Id.* (citing 42 C.J.S. *Indemnity* at § 29).

■■■ In this case, the obligation to indemnify is contractual. Under Louisiana law, the interpretation of a contract, in-cluding an indemnity clause, "is the determination of the common intent of the parties." *Berry v. Orleans Parish School Board*, 830 So.2d 283, 285 (La.2002). The intent of the parties will control whether a claim is encompassed in the indemnity agreement. *Id.* When a party seeks to shift his contractual liability to indemnify a third party, "express notice is required." *Foreman v. Exxon Corporation*, 770 F.2d 490, 496 (5th Cir.1985) (applying Louisiana law and noting no distinction between indemnity principles of maritime tort law and Louisiana tort law) (quoting *Corbitt v. Diamond M Drilling Co.*, 654 F.2d 329, 334 (5th Cir.1981) (a maritime contract applying federal law)).[3] The interpretation of the terms of the contract is a matter of law. *Id.*

Part 3 of the agreement between Transporter and Crowley provides the terms and conditions of indemnification and insurance:

3.2  *INDEMNIFICATION*

3.21  Carrier[4] hereby releases and agrees to defend, hold harmless, and

---

**3.** In *Foreman*, the Court of Appeals considered the issue whether Exxon Corporation was entitled to receive indemnification from Offshore Casing Crews, Inc., pursuant to a contract, for amounts Exxon paid to the plaintiff for Exxon's fault and the amounts paid to Diamond M. Company as a result of Exxon's contractual agreement with Diamond M to indemnify Diamond M for its share of fault in causing the plaintiff's injury. 770 F.2d at 491. The Court of Appeals held that Offshore was required to indemnify Exxon for its direct liability, but it was not required to indemnify Exxon for the amounts Exxon owes in contractual indemnity to Diamond M. *Id.* The agreement between Exxon and Offshore provided for indemnity for claims for injury or death of persons resulting from willful or negligent acts or omissions. *Id.* at 497. The Court of Appeals rejected Exxon's argument that the language of the indemnity provision required Offshore to reimburse Exxon for Exxon's contractual liability to Diamond M and held that indemnity was limited to claims based upon tortious acts, not contractual injuries. *Id.*

The Court of Appeals in *Foreman* relied on its previous decision in *Corbitt*, in which the issue was whether Shell Oil Company was entitled to indemnification under the terms of its contract with Sladco, Inc. for claims by Diamond M under its contract with Shell for injuries sustained by a Sladco employee aboard Diamond M's drilling rig. 654 F.2d at 330–31. The Court of Appeals held that indemnification was not required because the Sladco–Shell agreement did not specifically provide for Sladco to assume claims arising from Shell's own separate contractual obligations. *Id.* at 333. The Court of Appeals stated that, if Shell had intended that Sladco forego its limited liability for employee injuries under the workers' compensation scheme, "Shell should have said so in clear, specific terms." *Id.*

**4.** "Carrier" is defined in Part 1.2 as The Transporter, Inc.

indemnify Crowley Corporation[5] and its insurers and re-insurers, from and against any and all loss, damage, liability, cost, or expenses suffered or incurred by Crowley Corporation, including but not limited to that arising out of, or connected with, injuries, or death, of any persons, loss or damage to property of any persons, or loss or damage to any Equipment, or any fines or penalties, in any way arising out of the Carrier having control or possession of any piece of Equipment during any Interchange Period, including any costs of legal representation by way of attorneys' fees, attorneys' disbursements, defense costs, and expenses, whether or not resulting from litigation, no matter how any of the above may be caused during the Interchange Period. . . .

3.3 *INSURANCE*

Carrier shall, in partial compliance with its obligations to Crowley under this Agreement, at all times, during the Term of the Agreement maintain insurance coverages in the amounts appearing in Section 3.4 and with the terms and conditions appearing in this Section 3.3 and Section 3.4.

. . . .

3.3.4 Any and all liability insurance obtained hereunder by the Carrier shall name as additional insured Crowley Corporation. The additional insured endorsement language shall read as follows:

"Coverages are provided to Crowley Corporation on a primary basis with respect to liability arising out of the named insured's ongoing operations related to the interchange of equipment under the Equipment Interchange Agreement, Further, the coverages shall apply for indemnity and defense on a basis consistent with that contained in the Equipment Interchange Agreement, including but not limited to the Indemnification clause 3.2.1. All terms used in the endorsement are used as defined in the Equipment Interchange Agreement."

The court's interpretation of the agreement between Transporter and Crowley leads to the conclusion that the parties did not express an intent for Transporter and Lumbermens to provide indemnification for the contractual obligation of Crowley and ICSP to Dana. Transporter agreed to release, defend, and indemnify "Crowley Corporation and its insurers" from "loss, damage, liability, cost, or expenses suffered or incurred by **Crowley Corporation**." (emphasis added). Absent from the agreement is any language obligating Transporter to indemnify Lumbermens from any liability for Lumbermens' loss or liability arising out of Dana being an additional insured on the Commercial Lines policy issued to Crowley. Without explicit language that there is an obligation, it is unreasonable to assume that Transporter intended to undertake the Lumbermens' obligation to Dana. The agreement protects Crowley and Lumbermens from exposure for tort liability incurred by Crowley Corporation, but it does not shift to the Transporter the obligation to indemnify Lumbermens from and against liability as Dana's insurer. Therefore, Part 3.2 of the agreement does not give Transporter the

---

5. "Crowley Corporation" is defined in Part 3.1 as Crowley Maritime Corporation, Crowley American Transport, Inc., and each of their direct and indirect subsidiaries, affiliated or related corporations or entities thereof, and their insurance underwriters, and Beacon Insurance Company, Ltd. and its reinsurers.

"Crowley Corporation" is used inconsistently in the indemnity clause because it states that "Crowley Corporation and its insurers and re-insurers" are entitled to defense and indemnity, even though the definition of "Crowley Corporation" in Part 3.1 includes the insurers and reinsures.

requisite express notice that Lumbermens is shifting its liability under the insurance contract to Transporter, and Lumbermens is not entitled to defense and indemnity in American Home's suit against Lumbermens under Transporter's agreement with Crowley.

Accordingly, there are no disputed issues of material fact, and Transporter and ICSP are entitled to judgment as a matter of law on Lumbermens third-party claim seeking defense and indemnity if Lumbermens is found liable to American Home.