## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-375

**UNDERWRITERS AT LLOYD'S SYNDICATE 1036, ET AL.**

**VERSUS**

**DANOS & CUROLE MARINE CONTRACTORS, L.L.C., ET AL.**

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2012-5983
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Shannon J. Gremillion, Judges.

**AMENDED IN PART, REVERSED
IN PART AND RENDERED.**

**W. Gerald Gaudet**
**Voorhies & Labbé**
**P. O. Box 3527**
**Lafayette, LA 70502-3527**
**Telephone: (337) 232-9700**
**COUNSEL FOR:**
**Defendant/Appellant - Danos & Curole Marine Contractors, L.L.C.**

**Edward Joseph Koehl, Jr.**
**Jones Walker LLP**
**201 St. Charles Avenue – 47th Floor**
**New Orleans, LA 70170-5100**
**Telephone: (504) 582-8176**
**COUNSEL FOR:**
**Defendant/Appellant - The Gray Insurance Company**

**Douglas C. Longman, Jr.**
**Jones Walker LLP**
**P. O. Drawer 3408**
**Lafayette, LA 70502-3408**
**Telephone: (337) 593-7600**
**COUNSEL FOR:**
    **Defendant/Appellant - The Gray Insurance Company**

**Robert Michael Kallam**
**Preis PLC**
**P. O. Drawer 94-C**
**Lafayette, LA 70509**
**Telephone: (337) 237-6062**
**COUNSEL FOR:**
    **Plaintiffs/Appellees - Badger Oil Corporation and Underwriters at**
    **Lloyd's Syndicate 1036**

**THIBODEAUX, Chief Judge.**

An employee of Danos & Curole Marine Contractors, L.L.C. was injured while working on a fixed platform that was owned and operated by Badger Oil Corporation on the Outer Continental Shelf ("OCS") off the coast of Texas. The employee's injury occurred as he attempted to swing from the platform to a utility vessel owned and operated by Kevin Gros Offshore, L.L.C.

The employee filed suit against both Badger Oil and Kevin Gros, seeking damages for negligence. Pursuant to a Master Service Agreement ("MSA") between Kevin Gros and Badger Oil, Kevin Gros demanded that Badger Oil defend and indemnify it against the employee's claims. In response, Badger Oil sought defense and indemnity from Danos & Curole for its contractual liability to Kevin Gros pursuant to a separate MSA between Badger Oil and Danos & Curole. Danos & Curole denied this demand, contending that the language of the MSA between Badger Oil and Danos & Curole does not explicitly require Danos & Curole to defend and indemnify Badger Oil against its contractual obligations to third parties.

At a hearing on cross motions for summary judgment, the trial court granted summary judgment in favor of Badger Oil and its insurer, Underwriters at Lloyd's Syndicate 1036 ("Underwriters"), and denied the cross motions of Danos & Curole and its insurer, Gray Insurance Company, reasoning that the expansive language in the MSA between Badger Oil and Danos & Curole extended indemnity protection beyond tort liability to contractual liability with third parties. The trial court further noted that although the parties stipulated that Texas law governed the interpretation of MSA, it would not make a specific finding as to

whether Texas law or general maritime law applies, as the contract interpretation would be the same under either body of law. For the following reasons, we amend the trial court's judgment in part, finding that Texas law governs the interpretation of the MSA. We further reverse the trial court's granting of summary judgment in favor of Underwriters and Badger Oil and grant summary judgment in favor of Danos & Curole and Gray, dismissing all claims with prejudice.

## I.

## ISSUES

We shall consider:

(1) whether general maritime law or Texas law governs the interpretation of the MSA between Badger Oil and Danos & Curole; and

(2) whether the trial court erred in granting summary judgment in favor of Underwriters and Badger Oil and denying the cross motions for summary judgment filed by Danos & Curole and Gray.

## II.

## FACTS AND PROCEDURAL HISTORY

Thao Nguyen, an employee of Danos & Curole, was injured while working as a blast/paint superintendent on an OCS fixed platform that was owned and operated by Badger Oil off the coast of Texas. Specifically, Mr. Nguyen's injury occurred as he attempted to swing via swing rope from the platform to a utility vessel owned and operated by Kevin Gros.

After the incident, Mr. Nguyen filed suit against both Badger Oil and Kevin Gros, seeking damages for negligence. Badger Oil subsequently demanded that Danos & Curole and its insurer, Gray, defend and indemnify Badger Oil for

Mr. Nguyen's tort claims pursuant to the terms of the MSA between Badger Oil and Danos & Curole. Specifically, Badger Oil relied on Section 7(a) of the MSA in making its demand, which stated:

### 7. Indemnity Obligations

a. [Danos & Curole] releases [Badger Oil] from any liability to [Danos & Curole] for, and [Danos & Curole] shall protect, defend, indemnify and hold harmless [Badger Oil], its principals, subsidiaries and related or affiliated companies, and its and their directors, officers, employees, agents, servants and underwriters (hereinafter referred to as "[Badger Oil] indemnitees"), from and against any and all claims, demands, causes of action and lawsuits of every kind and character (whether meritorious or not) brought by any person or entity, and all related losses, damages, costs and expenses, including attorneys fees and court costs, for personal injury, death, disease or illness, whenever occurring, suffered or incurred by [Danos & Curole], its subcontractors and vendors, and the directors, officers, employees, agents and servants of any of them, arising out of or in any way directly or indirectly related to the work rendered under this MSA by [Danos & Curole], howsoever caused, including the unseaworthiness or unairworthiness of any craft, or the negligence (whether sole or concurrent, active or passive) or other legal fault (including strict liability) of any of the [Badger Oil] indemnitees, excepting only [Badger Oil's] gross negligence or willful misconduct.

Considering Gray was the insurer of Danos & Curole, Badger Oil further relied on Section 6(f) of the MSA in making its demands against Gray, contending it is entitled to additional insured status:

f. With respect to all policies of insurance, [Danos & Curole] shall furnish evidence that [Danos & Curole's] underwriters waive all rights of subrogation against [Badger Oil] and its underwriters. [Danos & Curole] shall also furnish evidence that [Badger Oil] is named as an additional assured in all policies of insurance, with the exception of the Workmen's Compensation policy, and that [Badger Oil] is named as an additional assured in the Comprehensive General Liability and the Automobile Public Liability policies of insurance. However, in no event shall [Badger Oil] receive the benefit of [Danos &

Curole's] insurance by additional assured status, waiver of subrogation, or otherwise for [Badger Oil's] indemnity obligations hereunder or for obligations of any nature not arising under this MSA.

Danos & Curole, along with Gray, accepted these demands.

Pursuant to a completely separate MSA between Kevin Gros and Badger Oil, Kevin Gros demanded that Badger Oil defend and indemnify it against Mr. Nguyen's tort claims. In response, Badger Oil sought defense and indemnity from Danos & Curole for its contractual liability to Kevin Gros pursuant to Section 7(a) of the MSA between Badger Oil and Danos & Curole. Danos & Curole denied this demand, contending that the language of Section 7(a) does not explicitly require Danos & Curole to defend and indemnify Badger Oil against its contractual obligations to third parties.

After Underwriters and Badger Oil initially petitioned for declaratory judgment, they filed a Motion for Summary Judgment, seeking a ruling that Danos & Curole and Gray must defend and indemnify Underwriters and Badger Oil against the contractual claims of Kevin Gros.[1] Underwriters and Badger Oil also sought reimbursement for costs and attorney fees incurred in prosecuting their claims for defense and indemnity. In response, both Danos & Curole and Gray filed cross motions for summary judgment seeking dismissal of the claims for defense and indemnity against the contractual claims of Kevin Gros.

At the hearing on the cross motions for summary judgment, the trial court granted summary judgment in favor of Underwriters and Badger Oil and denied the cross motions of Danos & Curole and Gray, reasoning that the

---

[1]Badger Oil and Underwriters settled claims with Mr. Nguyen against Kevin Gros. They now only seek indemnity for defense costs and settlement amounts from Danos & Curole and Gray.

4

expansive language in Section 7(a) providing indemnity protection against "any and all claims, demands, causes of action and lawsuits of every kind and character…for personal injury, death, disease or illness" extended indemnity protection beyond tort liability to contractual liability with third parties. The trial court further noted that although the parties stipulated that Texas law governed the interpretation of MSA, it would not make a specific finding as to whether Texas law or general maritime law applies, as the contract interpretation would be the same under either body of law. Danos & Curole and Gray now appeal the trial court's judgment, contending that Texas law should govern the interpretation of this MSA. Furthermore, they argue that they are entitled to summary judgment, as the indemnity provision in the MSA between Badger Oil and Danos & Curole does not expressly extend to contractual liabilities with third parties, and Badger Oil is not entitled to additional insured status under the Gray policy with Danos & Curole.

III.

## STANDARD OF REVIEW

Choice of law determinations are, by their very nature, questions of law that we review de novo. *Wooley v. Lucksinger*, 06-1140 (La.App. 1 Cir. 12/30/08), 14 So.3d 311, *rev'd in part on other grounds*, 09-571 (La. 4/1/11), 61 So.3d 507.

We further review a grant of summary judgment de novo "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate, i.e., whether a genuine issue of material fact exists and whether the mover is entitled to judgment as a matter of law." *Supreme Servs. and*

5

*Specialty Co., Inc. v. Sonny Greer, Inc.*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638. In our review, we shall consider the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-moving party. *Hines v. Garrett*, 04-806 (La. 6/25/04), 876 So.2d 764. If the mover will not bear the burden of proof at trial on the matter, then he must only present evidence showing a lack of factual support for one or more essential elements to the non-mover's case. La.Code Civ.P. art. 966(C)(2); *Simien v. Med. Protective Co.*, 08-1185 (La.App. 3 Cir. 6/3/09), 11 So.3d 1206, *writ denied*, 09-1488 (La. 10/2/09), 18 So.3d 117. Once the mover has met his burden of proof, the burden shifts to the non-mover to produce factual support sufficient to establish that he will be able to meet his burden of proof at trial. *Id.* If the non-mover fails, the motion for summary judgment should be granted. *See id.*

IV.

**LAW AND DISCUSSION**

**Choice of Law**

While the trial court did not feel it necessary to decide what body of law governs the interpretation of the MSA between Badger Oil and Danos & Curole, we shall address this issue to resolve the inherent discord between the choice of law provision in the MSA, which requires the application of general maritime law to issues involving offshore work,[2] and the Outer Continental Shelf

---

[2]Section 23 of the MSA between Badger Oil and Danos & Curole states:

**23. Applicable Law**

 In the event the WORK consists of any offshore WORK, this MSA shall be governed by, construed and interpreted in accordance with the General Admiralty and Maritime Law of the United States. In the event the WORK consists exclusively of

Lands Act ("OCSLA"), which potentially requires the application of the adjacent state law of Texas. The United States Supreme Court explains that "[OCSLA] makes it clear that federal law, supplemented by state law of the adjacent State, is to be applied to these artificial islands as though they were federal enclaves in an upland State." *Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355, 89 S.Ct. 1835, 1837 (1969). To determine whether adjacent state law applies as surrogate federal law (1) the controversy must arise on a situs covered by OCSLA; (2) federal maritime law must not apply on its own force; and (3) state law must not be inconsistent with federal law. *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043 (5th Cir.), *cert. denied*, 498 U.S. 848, 111 S.Ct. 136 (1990) (citing *Rodrigue*, 395 U.S. 352). Applying this test to the present case, it is clear that Texas law, as the adjacent state law, governs the interpretation of the MSA in question.

In regards to the situs requirement for contractual claims of indemnity, the Fifth Circuit has held that "the 'controversy' . . . arises under an OCSLA situs if a majority of the work called for by the contract is on stationary platforms or other enumerated OCSLA situses." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009), *cert. denied*, 560 U.S. 952, 130 S.Ct. 3386 (2010). Here, since the MSA in question called for Danos & Curole to provide sandblasting and painting services on Badger Oil's fixed

---

onshore WORK, or if the General Maritime or Admiralty Laws of the United States are judicially determined to be inapplicable, or if the General Maritime or Admiralty Laws calls for the application of state law, this MSA shall be governed by, construed and interpreted in accordance with the laws of the State of Louisiana, excluding any choice of law rule which may direct the application of the laws of another state.

platform located on the OCS off the coast of Texas, the situs requirement is satisfied.

In determining whether federal law applies on its own force, the key question is whether or not the contract is maritime in nature, considering that "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 22-23, 125 S.Ct. 385, 392 (2004). The Fifth Circuit has provided guidance in ascertaining maritime contracts subject to federal maritime law:

> Whether the blanket agreement and work orders, read together, do or do not constitute a maritime contract depends, as does the characterization of any other contract, on the "nature and character of the contract," rather than on its place of execution or performance.
>
> . . . .
>
> Determination of the nature of a contract depends in part on historical treatment in the jurisprudence and in part on a fact-specific inquiry. We consider six factors in characterizing the contract: 1) what does the specific work order in effect at the time of injury provide? 2) what work did the crew assigned under the work order actually do? 3) was the crew assigned to work aboard a vessel in navigable waters; 4) to what extent did the work being done relate to the mission of that vessel? 5) what was the principal work of the injured worker? and 6) what work was the injured worker actually doing at the time of injury?

*Davis & Sons, Inc. v. Gulf Oil Corp.*, 919 F.2d 313, 316 (5th Cir. 1990) (footnotes omitted).

Considering these factors, the MSA in question is not maritime in nature. The work contemplated in the MSA was for Danos & Curole to provide painting and sandblasting services to Badger Oil's fixed platform. There is no mention of any work aboard or in service of a vessel on navigable waters.

Furthermore, Mr. Nguyen, as an employee of Danos & Curole, was engaged solely in these painting and sandblasting activities at the time of his injury. Since this MSA does not constitute a maritime contract, federal maritime law does not govern on its own force.

Finally, in regards to the third element of the *Rodrique* test, Texas law is not inconsistent with federal law. The Fifth Circuit has held that Louisiana's Oilfield Indemnity Act is not inconsistent with federal law as it relates to non-vessel related indemnity agreements. *Knapp v. Chevron USA*, *Inc.*, 781 F.2d 1123 (5th Cir. 1986), *superseded on other grounds by statute*, La.Civ.Code art. 466. Considering the Texas Oilfield Indemnity Act is virtually identical to the Louisiana Oilfield Indemnity Act, it follows that the Texas Oilfield Indemnity Act is also not inconsistent with federal law in regards to non-vessel related indemnity agreements. *See* Tex. Civ. Prac. and Rem. Code § 127.001 *et seq.*; La.R.S. 9:2780. Furthermore, the rules of contract interpretation for indemnity agreements under Texas law and general maritime law are also practically identical and not inconsistent. *See Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir. 1981) (holding that indemnity contracts governed by general maritime law should be interpreted to cover all losses and liabilities which appear to be within the contemplation of the parties); *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417 (Tex. 2000) (holding that indemnity agreements in Texas are construed under the normal rules of contract construction with the primary goal of giving effect to the parties' intent as expressed in the contract).

It is true that the MSA in question contains a choice of law provision mandating that general maritime law shall govern any incident involving offshore work, and in the event that general maritime law is deemed judicially inapplicable,

Louisiana law shall apply. However, the Fifth Circuit has held that choice of law provisions are void and unenforceable in regards to disputes governed by OCSLA, as such "provision[s] violate[] the federal policy expressed in the [OCSLA], which seeks to apply the substantive law of the adjacent states to problems arising on the Shelf." *Matte v. Zapata Offshore Co.*, 784 F.2d 628, 631(5th Cir.), *cert. denied*, 479 U.S. 872, 107 S.Ct. 247 (1986). The Fifth Circuit further noted that "[t]his policy of federal deference reflects the Congress's recognition of the special relationship which exists between the Outer Continental Shelf and the adjacent states." *Id.* Considering Mr. Nguyen's injuries occurred on the OCS and this indemnity dispute is, therefore, governed by OCSLA, the choice of law provision in the MSA is unenforceable and in violation of federal policy. As such, in applying OCSLA, we recognize that the three factors of the *Rodrigue* test are satisfied, and thus, Texas law shall govern the MSA.

**Danos & Curole's Indemnity Obligation to Underwriters and Badger Oil**

Danos & Curole contend that the language of Section 7(a) in the MSA does not require Danos & Curole to defend and indemnify Badger Oil against its contractual obligations to third parties, such as Kevin Gros. We agree.

The Texas Supreme Court has provided the following guidance in interpreting contract provisions:

> In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense.

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005) (citations omitted).

Applying these principles to the MSA in question, the parties did not intend for Danos & Curole to indemnify Badger Oil against its contractual liabilities to third parties. Section 7(a) requires that Danos & Curole indemnify the Badger Oil indemnitees:

> from and against any and all claims, demands, causes of action and lawsuits of every kind and character . . . for personal injury, death, disease or illness, whenever occurring, suffered or incurred by [Danos & Curole], . . . arising out of or in any way directly or indirectly related to the work rendered under this MSA by [Danos & Curole][.]

Specifically, the Badger Oil indemnitees covered under Section 7(a) are "[Badger Oil], its principals, subsidiaries and related or affiliated companies, and its and their directors, officers, employees, agents, servants and underwriters[.]" In contrast, Sections 7(e), 7(f), 7(g), and 7(h) of the MSA, which require Danos & Curole to indemnify Badger Oil against government regulation violations, patent infringement claims, pollution claims, and work damages, all explicitly include "other contractors and invitees to which [Badger Oil] owes indemnification" as indemnitees. When reading the contract in its entirety to achieve harmony among the different provisions, the noticeable absence of this indemnitee clause in Section 7(a) juxtaposed with its inclusion in Sections 7(e), 7(f), 7(g), and 7(h) indicates that the parties did not intend for contractual indemnity claims of third parties to be covered by section 7(a) of the MSA. To hold otherwise would render this indemnitee clause meaningless and run afoul of the well-established principles of Texas contract interpretation.

Even beyond the desire to harmonize and give effect to the different provisions of the contract, requiring that the parties explicitly state whether third party invitees and contractors are included as indemnitees is critical from a policy standpoint, as it provides necessary notice to the indemnitor that it may be liable for claims by parties not privy to the contractual negotiations. While we recognize that Underwriters and Badger Oil have referenced cases that extend indemnification to contractual claims with third parties, it must be noted that the ruling court in each of the cited cases shares our policy sentiment, as they all made note of the fact that the indemnity provisions under review expressly included third party invitees and contractors as indemnitees. *See, e.g., Sumrall v. Ensco Offshore Co.*, 291 F.3d 316, 322 (5th Cir. 2002) (reasoning that the employer "expressly agreed to indemnify not only [the company] but also [the company's] 'contractors and subcontractors'"); *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 365 (5th Cir. 2009) (reasoning that "the agreement unambiguously encompasses indemnity for [the company] and 'its contractors'"); *Ebanks v. Offshore Lifeboats, LLC*, 08-1340, p. 5 (E.D. La. 2009), 2009 WL 3834363 (unpublished opinion) (reasoning that the indemnity provision in question "is distinguishable from the indemnity provision in *Corbitt* in that [the indemnitee provision in question] names '[Company], its . . . affiliated and interrelated corporations . . . and . . . subcontractors' as indemnitees"); *Clayton Williams Energy, Inc. v. National Union Fire Ins. Co. of La.*, 03-2980, p. 15 (E.D. La. 2004), 2004 WL 2452780 (unpublished opinion) (reasoning that "the indemnity provision clearly expresses an intent to indemnify not only [the company], but also [the company's] invitee"). Considering the glaring absence of such an indemnitee provision in Section 7(a), it

would be against public policy to read into this provision an intent to indemnify for contractual liabilities to third parties.

Underwriters and Badger Oil further argue that the expansive language in Section 7(a) providing for indemnification "against any and all claims, demands, causes of action and lawsuits of every kind and character… for personal injury, death, disease or illness" encompasses contractual indemnification claims of third parties arising from personal injuries. While this language is indeed expansive, it must be read within the context of the entire provision, which limits the scope of this language to claims "for personal injury, death, disease or illness." The Fifth Circuit has held that indemnity provisions containing qualifying language limiting coverage to claims "for injury or death" effectively limit indemnitees to indemnification against claims grounded in tort. *See Foreman v. Exxon Corp.*, 770 F.2d 490 (5th Cir. 1985); *Corbitt*, 654 F.2d 329. Here, the express language of Section 7(a) is in line with this assertion. The use of the language "**for** personal injury" in the indemnity provision effectively limits indemnity claims to those grounded in tort. Had the parties intended to include contractual claims that are consequences of personal injuries, they could have easily used such consequential and encompassing language. Here, such language is absent. "While we are mindful of the policy that, at drilling sites, employers are generally responsible for their own employees . . . we cannot expand the contractual language beyond the contract's express language." *Nabors Drilling USA, L.P. v. Encana Oil & Gas (USA) Inc.*, 02-12-00166-CV, p. 5 (Tex.App. -Fort Worth July 11, 2013), 2013 WL 3488152, *review denied* (Dec. 13, 2013) (unpublished opinion) (citation omitted). Badger Oil's contractual liability claim, while a consequence of a personal injury, is not a claim grounded in tort.

Consequently, it is not covered by Section 7(a), irrespective of the other expansive language in the indemnity provision.

## Gray's Insurance Obligation to Underwriters and Badger Oil

While Gray was required to name Badger Oil an additional assured under the MSA, such coverage has its limits. Section 6(f) of the MSA between Danos & Curole and Badger Oil states that "[Danos & Curole] shall . . . furnish evidence that [Badger Oil] is named as an additional assured in all policies of insurance[.]" However, Section 6(f) also states that "in no event shall [Badger Oil] receive the benefit of [Danos & Curole's] insurance by additional assured status, waiver of subrogation, or otherwise for [Badger Oil's] indemnity obligations hereunder or for obligations of any nature not arising under this MSA." As discussed above, indemnification against Badger Oil's contractual liabilities to Kevin Gros does not arise under this MSA. As such, Underwriters and Badger Oil are not entitled to additional assured status under the Gray insurance policy with Danos & Curole.

## Summary Judgment

Because the MSA can be construed from the four corners of the instrument without looking to extrinsic evidence, the contractual interpretation of the agreement is a matter of law, and summary judgment is appropriate. *Brown v. Drillers, Inc.*, 93-1019 (La. 1/14/94), 630 So.2d 741; *LaFleur v. Hollier Floor Covering, Inc.*, 00-969 (La.App. 3 Cir. 12/6/00), 774 So.2d 359. After reviewing the MSA between Danos & Curole and Badger Oil, we conclude that it does not require Danos & Curole to indemnify and defend Badger Oil against its contractual liabilities to Kevin Gros. We further conclude that Badger Oil is not covered under

14

the Gray insurance policy with Danos & Curole, as Badger Oil does not qualify as an additional insured under the MSA. We, therefore, reverse the trial court's granting of summary judgment in favor of Underwriters and Badger Oil and grant summary judgment in favor of Danos & Curole and Gray, dismissing all claims against Danos & Curole and Gray with prejudice.

V.

## CONCLUSION

For the foregoing reasons, we amend the ruling of the trial court, finding that Texas law governs the interpretation of the Master Service Agreement between Badger Oil and Danos & Curole. We further reverse the trial court's granting of summary judgment in favor of Underwriters and Badger Oil and grant summary judgment in favor of Danos & Curole and Gray, dismissing all claims with prejudice. Costs are assessed against Underwriters and Badger Oil.

**AMENDED IN PART, REVERSED IN PART AND RENDERED.**